# IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

1
2
3
4   Darrell P. Harris                              *
5   3302 Parkside Drive                            *        Case No:
6   Baltimore, Maryland 21214                      *
7   **Plaintiff**                                  *        <u>**CIVIL COMPLAINT**</u>
8               V.                                 *
9                                                  *
10  BALTIMORE CITY POLICE                          *
11  DEPARTMENT                                     *
12   601 E. Fayette Street                         *        [DEMAND FOR JURY TRIAL]
13  Baltimore, Maryland 21201;                     *
14                                                 *
15    Serve On:                                    *
16  Commissioner Anthony W. Batts                  *
17  601 E. Fayette Street                          *
18  Baltimore, Maryland 21201;                     *
19                                                 *
20  and                                            *
21                                                 *
22  ANTHONY W. BATTS                               *
23  In his official capacity as                    *
24  Commissioner of The Baltimore City             *
25  Police Department                              *
26  601 E. Fayette Street                          *
27  Baltimore, Maryland 21201;                     *
28                                                 *
29  and                                            *
30                                                 *
31  POLICE NATHAN ULMER                            *
32  In both his official and individual            *
33  capacity as an Police of the           .       *
34  Baltimore City Police Department               *
35  1900 Argonne Drive                             *
36  Baltimore, Maryland 21218;                     *
37                                                 *
38  and                                            *
39                                                 *
40  6 UNKNOWN POLICES & K9 DOG                     *
41  In both their official and individual          *
42  capacity as an Police of the                   *
43  Baltimore City Police Department               *
44  1900 Argonne Drive                             *
45  Baltimore, Maryland 21218;                     *
46                                                 *
                                                    *

2014 JUN 16 PM 2:00
CIVIL DIVISION

Case: 24-C-14-003699
CV File New
                    $80.00
MLSC
                    $55.00
TOTAL           $135.00

Receipt #201400014837
Cashier: MST CCBCX82
06/16/14  12:24pm

| | | |
|---|---|---|
| 47 | SERGEANT NATALIE PRESTON | * |
| 48 | In both hers official and individual | * |
| 49 | capacity as an Police of the | * |
| 50 | Baltimore City Police Department | * |
| 51 | 1900 Argonne Drive | * |
| 52 | Baltimore, Maryland 21218 | * |
| 53 | | * |
| 54 | and | * |
| 55 | | * |
| 56 | MAYOR & CITY COUNCIL | * |
| 57 | OF BALTIMORE ("CITY") | * |
| 58 | STEPHANIE RAWLINGS-BLAKE | * |
| 59 | In both their official and individual | * |
| 60 | capacities. | * |
| 61 | 100 North Holliday Street #250 | * |
| 62 | Baltimore, Maryland 21202 | * |
| 63 | | * |
| 64 | and | * |
| 65 | | * |
| 66 | GOVERNOR & THE STATE | * |
| 67 | MARYLAND | * |
| 68 | MARTIN O'MALLEY | * |
| 69 | In both his official and individual | * |
| 70 | capacity as Governor | * |
| 71 | 100 State Circle, | * |
| 72 | Annapolis, MD 21401 | * |
| 73 | | * |

74 ** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ***

75

76 ## CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL

77

78      NOW COMES THE plaintiff, Darrell P. Harris in Pro Per (hereinafter "Plaintiff")

79 an alleges this Complaint hereby suing the defendants herein to redress violations of his

80 civil and legal rights under the Constitution of Maryland Articles 2, 5, 19, 24, 26, United

81 States Constitution Amendments 1, 4, 7, 9, 14, as well as 42 U.S.C. § 1983, 18 U.S.C. §

82 242, Plaintiff states as follows:

83

84

## NATURE OF THE ACTION

85

86        This is an action for violations by members of the BCPD of the rights

87   protected to a citizen of the United States and the State of Maryland under the

88   Constitution of the United States and the Constitution of Maryland Declaration of Rights

89   including claims brought under 42 U.S.C. § 1983 & 18 U.S.C. § 242 for violations while

90   under the color of law;

91

92   • The right to be free from unreasonable searches and seizures protected under the

93      Fourth and Fourteenth Amendments and Article 26 of the Constitution of

94      Maryland, Declaration of Rights.

95   • The right to be free from deprivation of property without due process protected

96      under the Fourteenth Amendment and Constitution of Maryland, Declaration of

97      Rights Articles, 24 and 46.

98   • The right to free-speech protected under the First and Fourteenth Amendments,

99      and Constitution of Maryland, Declaration of Rights Article 40.

100  • Assault & Battery, False Arrest, Stalking and False Imprisonment.

101  • False Light and Harassment.

102  • Illegal Search & Seizure, Invasion of Privacy and Conversion.

103  • Gross Negligence, Actual Malice and Intentional Infliction of Emotional Distress

104      & Embarrassment.

105

106

## JURISDICTION AND VENUE

This action is brought pursuant to the Constitution of Maryland Articles 2, 5b, 24, 25, 46, 18 U.S.C. § 242, 42 U.S.C. § 1983, §1988 and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution for which Jurisdiction is found and runs concurrent. Cause of action arising from conduct in State. The Circuit Court has exclusive jurisdiction over a large claim action, which, for purposes of this section, means a civil action for money in which the amount claimed may exceed $5,000 exclusive of interest, costs, and attorney's fees, if attorney's fees are recoverable by law or contract. Pursuant to the Annotated Code of Maryland, Courts & Judicial Proceedings Article, § 6-102 and § 6-103, jurisdiction and venue of this matter is proper before the Circuit Court for Baltimore City.

At all times relevant herein, the Plaintiff was an inhabitant of Baltimore City, Maryland. At all times relevant herein, the Defendants were performing their Official duties employed in Baltimore City, Maryland when these tortuous acts where performed.

## PARTIES

1. Plaintiff, (Darrell P. Harris) is an inhabitant of Maryland with a residence at 3302 Parkside Drive, Baltimore, Maryland 21214. He is employed as a Mail Clerk with the United States Postal Service and is a Licensed Real Estate Agent. He is a person within the meaning of the Maryland Declaration of Rights and the Constitution of the United States and has been injured and risk further harm as a result of the illegal acts and omissions by the Defendants.

4

131         2. At all times relevant to this Complaint, Ulmer was a duly authorized agent,

132  servant and employee of BCPD, working from the Northeast District. Police Nathan

133  Ulmer is sued in his official and individual capacity.

134

135         3. At all times relevant to this Complaint, Six Unknown Polices and K9 was a

136  duly authorized agents, servant and employee of BCPD, working from the Northeast

137  District. Five Unknown Polices and K9 are sued in their official and individual

138  capacities.

139

140         4. At all times relevant to this Complaint, Sargent Natalie Preston was a duly

141  authorized agent, servant and employee of BCPD, working from the Northeast District.

142  Sargent Natalie Preston is sued in her official and individual capacity.

143

144         5. The Polices are persons as defined by 42 U.S.C. § 1983, and at all times

145  relevant were acting under color of state law.

146

147         6. BCPD is a government agency. The Baltimore City Council holds hearings

148  on police department policy and establishes BCPD's budget. BCPD is a "person"

149  as defined in 42 U.S.C. § 1983.

150

151         7. Anthony W. Batts is the Commissioner of BCPD, and its chief law

152  enforcement Police. He is appointed by the Mayor of Baltimore under the advice

153  and consent of the Baltimore City Council. The Commissioner, in his capacity as such,

154  exercises final policy making authority for BCPD, establishes the duties, standards of

155  conduct, and discipline of Polices. He establishes policies regarding hiring, screening,

156  training, monitoring, supervision and discipline of Polices employed by BCPD. He is a

157  person pursuant to 42 U.S.C. § 1983, and has acted at all times relevant under color of

158  state law, and is joined in this Complaint in his official capacity.

159

160      8. Defendant Baltimore City Police Department is, for all relevant legal and

161  practical purposes herein, part of the government of the City of Baltimore. For the

162  purposes of this Complaint, Baltimore City Police Department is intended to include the

163  Mayor and City Council of Baltimore and Baltimore City, both of whom have plenary

164  control over the Baltimore City Police Department. At all times relevant, all Defendants

165  were acting under the color of the laws, statutes, ordinances, rules, regulations, customs

166  and usages of the State of Maryland. At all times relevant, all Defendants had an

167  affirmative duty, but otherwise failed to protect the Plaintiff from harm, including and

168  especially, the risk of violation of his constitutional rights.

169

170      9. Defendant Mayor and City Council of Baltimore, ("City of Baltimore" or

171  "City") and Baltimore City are persons with power to sue or be sued in any court.

172      10. Defendant Governor of Maryland and State of Maryland are persons with

173  power to sue or be sued in any court.

174

175      11. "Person" includes individuals, partnerships, corporations, units of

176  government and any other legal entity which may be sued.

6

177 <u>**PRE-SUIT REQUIREMENTS**</u>

178       Plaintiff in pro per, met pre-suit requirements although it applies to third-party

179 claimants to reserves his right to legal representation at any time during proceedings and

180 has satisfied the prerequisites to suit specified by the Maryland Tort Claims Act, Md.

181 Code Ann., State Gov't (SG) § 12-106, and the Local Government Tort Claims Act, Md.

182 Code Ann., Cts. & Jud. Proc. (CJ) § 5-304, for each claim in this

183 complaint to which these laws apply.

184     1.  Plaintiff sent notice of his claims to the Baltimore City Solicitor bearing a

185         postmark from the United States Postal Service; and the Maryland State Treasurer

186         by certified mail, return receipt requested.

187

188     2.  The Baltimore City Solicitor did respond bearing a claim no. of 077469-103

189         stating "This acknowledges you're letter dated September 3, 2013. The conduct

190         alleged therein does not involve an employee of the Mayor and City Council of

191         Baltimore ("City"). For this reason, we do not believe the city has any legal

192         responsibility in this matter."

193
194

195     3.  The Maryland State Treasurer did respond bearing a claim no. of NS61440514

196         stating "We have determined that the State of Maryland is not liable in this

197         incident". Members of Baltimore City Police Department are not covered under

198         the MTCA. Instead, Baltimore City Police Department is specifically defined as a

199         local government for purposes of the Local Government Tort Claims Act.

200

201                 **ALLEGATIONS OF FACTS AND CAUSE OF COMPLAINT**
202
203
204         1.   On July 17, 2013 at 6:05 pm, the Plaintiff and his friend Richard Donaldson

205   was stopped by a marked jeep patrol unit while traveling from Richards home to go the

206   Plaintiffs home.

207         2.   Heading southbound on Loch Raven Blvd while sitting at the light, Plaintiff

208   observed a marked police jeep traveling eastbound on Argonne with 3 police Polices

209   looking very hard into his automobile all wearing very dark sunglasses from about 30 to

210   40 feet away.

211         3.   The jeep then made a U-turn in the middle of the intersection with no

212   emergency lights activated and pulled up facing the driver side door of the car.  When the

213   light turned green Plaintiff then made a left turn onto Argonne Dr. After Plaintiff

214   turned onto Argonne Dr., the police then active their emergency lights and Plaintiff

215   pulled to the side immediately.

216         4.   Plaintiff was approached by 3 male Polices, one that looked of Moorish

217   decent (will later be described as Police #1) and two that looked of European decent.

218         5.   Unidentified Police # 1 approached the driver side of the car, exchanged

219   greetings and he stated, "Do you see the way you're wearing your seat belt,

220   that's an "improper wear of a seatbelt".

221         6.   Plaintiff then replied it's no such thing as "improper wear of a seatbelt". He

222   replied are you going to tell me my job brother? Plaintiff replied "I know the law" several

223   times. Plaintiff asked if he was giving him a ticket and if he needed license and

224   registration he said yeah and the Plaintiff began to provide it.

225

226       7.   Plaintiff asked Unidentified Police #1 "What did I do?"  and Unidentified

227   Police # 1 stated "You didn't do anything" Plaintiff stated that this was the second time

228   this week that they were stopping him and that they were "profiling".  The Unidentified

229   #1 Police asked what did that have to do with him stopping the Plaintiff and that was his

230   1st time. Plaintiff then stated "this is what you all do, profile, you use the seatbelt as a

231   reason".

232       8.   Plaintiff then was asked to do a favor from Ulmer to take out his keys and

233   turn his automobile off. Plaintiff replied "For what? I'm going to park the car and give

234   him the license and registration like the Police asked" Ulmer then stated that he was

235   going to call K9 and the Plaintiff said "For what sir? Do you smell any drugs? The Police

236   then said "I'm going to reach in and take the keys". Ulmer stated he doesn't need to smell

237   any drugs and told Unidentified Police #3 to call K9.

238       9.   Plaintiff said "I know the law" said he knew it too and Plaintiff replied that's

239   cool and that he should stop breaking it then. Ulmer then walked around to the driver side

240   window and told Plaintiff to roll down the window. Plaintiff said no and asked for what?

241   It was 103 degrees that day and the Air Conditioning was on.

242       10. The Plaintiff let the Polices know that "he didn't feel safe" and Police Officer

243   Ulmer said "I don't care if you don't feel safe". After the aggression and show of force as

244   if they was going to break the window, under duress and in fear of being hurt by

245   shattering glass the Plaintiff rolled it down.

246       11. Ulmer then climbed through the window attacking the Plaintiff

247   while violently forcing him back in his seat grabbing on to his hands and arms and took

248   the keys out of the ignition.

249        12. While this was happening, the passenger said that he was going to call the

250   police. Unidentified Police#1 had already received the driver's license and registration.

251        13. In fear for his life the Plaintiff told the passenger to call 911 and asked for a

252   supervisor.

253        14. After waiting a substantial amount of time, Plaintiff asked if they were

254   waiting for K9 or just tickets. Unidentified Police #1 stated that the K9 is here and that

255   he would need the Plaintiff and The passenger to step out of the automobile.

256        15. Plaintiff then let the Polices know that he did not consent to any searches.

257   Plaintiff let Unidentified Police #1 know that a knife was in his pocket and

258   it was removed.

259        16. Plaintiff asked the age of the dog because it looked like a puppy. Plaintiff then

260   engaged in a conversation with the Supervisor who arrived before the K9 about being

261   stopped for a seat belt and that Ulmer had no reason to call for a K9.

262        17.  The Supervisor stated that they didn't need any reason that they could call a

263   K9 for anything.

264        18. Plaintiff expressed to the Supervisor that he was ready to go. Allegedly the K9

265   gotten a hit and the police began to search the car ripping the floor and back seats apart.

266        19. Plaintiff asked the K9 Handler and Supervisor how did the dog signal for a

267   hit. The supervisor stated that he didn't know how the dog signaled and that he got a hit.

268        20. The supervisor stated that the dog has a hit and that its drugs in the automobile

269   then stated or was in the automobile. Unidentified Police #1 then stated, based on that

270   information this is now a CDS investigation, the Plaintiff and Passenger were told to sit

271   on the curb by their hot jeep engine that was still running in 103 degree humid heat.

272        21. Plaintiff asked the Supervisor again how did the dog signaled for drugs. The

273   supervisor then spoke with the K9 unit Police over to the side and never answered any

274   questions.

275        22. Plaintiff stated that your dog is on drugs and for a treat your dog will get a hit

276   on any car you want.

277        23.  Plaintiff let the supervisor know that they were ready to go and requested the

278   names of all the Polices at the scene and the Supervisor told him he'd get a copy and he

279   never did.

280        24. The passenger asked if the Polices could use their "discretion" and let us go

281   with a warning and the supervisor stated that was up to the Police writing the ticket and

282   that it was on him.

283        25. While sitting on the curb Unknown Police # 1 began to record the Plaintiff

284   and passenger with his cell phone.

285        26. After almost an hour the Plaintiff and passenger were released and

286   the Plaintiff was given 3 citations. One for a cell phone because the Plaintiff recorded

287   them and two for seat belt violations that these Police saw and witnessed were worn.

288        27. After waiting over a month for a summons to appear in court to arrive in the

289   mail, the Plaintiff took it upon his self to check Maryland's case search website and

290   noticed that a docket had been set in place for the cases and that a failure to comply

291   suspension order was issued.

292        28. Ulmer issued 3 false tickets on expired Maryland Uniform

293   Complaint and Citation DR-49 form (Rev. 10/2005) with malice and intent, a blatant

294   attempt to secure a way to have an arrest or probable cause for driving on suspended

11

295 license.

296  29. September 3, 2013 Plaintiff filed Notice and Demand for Discharge for the

297 unlawful charges Ulmer enacted. On September 13, 2013 the charges were dropped.

298  30. Plaintiff attempted several times to file complaints with Internal Investigations

299 Unit. A Certified letter was mailed and it was sent back because no one claimed the mail

300 at the office using a wrong address being displayed on their website. Plaintiff then hand

301 delivered his complaint to the office himself.

302  31. The Plaintiff received a letter from Internal Investigations Unit dated

303 September 16, 2013 with case number CIU 13-03071acknowledging receipt of the

304 complaint, dated September 12, 2013.

305  32. On October 22, 2013 Plaintiff placed a call to the Internal Investigations Unit

306 and the telephone was hung up on him twice by an unidentified male.

307  33. After persistent calling, Plaintiff was able to get a supervisor (Stg. Natalie

308 Preston) she stated that the Plaintiff would need to come in and make a recorded

309 statement. Plaintiff objected to making a recorded statement because he wrote his

310 statement and they had it.

311  34. Stg. Preston then stated that she doesn't know if the Plaintiff wrote his

312 statement and if he didn't come in and make a recorded statement that she would drop the

313 investigation.

314  35. Plaintiff agreed to making statement against his will and was asked "what was

315 a good time for him to come in the next day for an interview. Plaintiff replied 10:30. Stg.

316 Preston then said "NO" 9:30 and if the Plaintiff didn't show at 9:30 she would drop the

317 complaint.

318    36. The next day when the Plaintiff went to meet with Stg. Preston he was made

319    to wait an hour before he left the Police station on Argonne Drive.

320    37. Code of Local Public Laws of Baltimore City § 16-2. Department established.

321    The Police Department of Baltimore City is hereby constituted and established as an

322    agency and instrumentality of the State of Maryland.

323    38. The purpose generally of the department shall be to safeguard the lives and

324    safety of all persons within the City of Baltimore, to protect property therein, and to assist

325    in securing to all persons the equal protection of the laws, to discharge its duties and

326    responsibilities with the dignity and manner which will inspire public confidence and

327    respect.

328    39. Which the defendants failed to do during these tortious acts and omissions.

329    The defendants have participated in an unlawful policy and practice of violating citizens'

330    rights during traffic stops in hopes to find contraband to create criminal cases.

331    40. After these types of events happen to innocent people they are often left with

332    the same traumatic feelings of being raped. In these instances from the people that are

333    supposed to protect and serve them.

334
335
336
337
338
339
340
341
342
343
344
345
346
347

13

348
349
350

## CLAIMS

### Count I, II, III
**1983-Right to be free from unreasonable searches and seizures protected under the
Fourth and Fourteenth Amendments and Article 26 of the Constitution of
Maryland, Declaration of Rights
(Against All Defendants)**

351
352
353
354
355

356   1.  Plaintiff incorporates the allegations made in paragraphs 1 to 40 in the cause

357   of complaint as if fully set forth herein.

358   2.  Plaintiff asserts this claim against all defendants, including Police Officer

359   Ulmer and 6 Unknown Polices and K9 in both their official and personal capacities.

360   3.  Article 26 of the Maryland Declaration of Rights protects the same rights and

361   freedoms protected by the Fourth Amendment to the United State Constitution.

362   4.  The Fourth Amendment  Protects the right of the people to be secure in

363   their Persons, Houses, Papers and "EFFECTS", against unreasonable searches and

364   seizures, shall not be violated.

365   5.  Effects being the Plaintiffs "Automobile" his "person property".  Which is

366   also a product of a "Person" and his "Papers" i.e. Ownership of his automobile threw the

367   "Papers" filed as title which end result is an "Effect" of a "Person" and his "Papers".

368   6.  A person is subject to a "seizure" within the meaning of the Fourth

369   Amendment when his liberty is restrained by a Police of the law by means of physical

370   force or show of authority. A seizure can take the form of a custodial arrest, a pedestrian

371   "stop-and frisk," or a traffic stop.

372   7.  After effectuating a traffic stop under the wrong assumption that the Plaintiff

373   was not wearing safety belt acting without a reason to believe, reasonable suspicion,

374   probable cause or warrant, Ulmer jumped through the window assaulting the Plaintiff

375   taking the keys out of the ignition, unlawfully "seizing" the Plaintiff, Passenger and his

376   automobile.

377       8.   After seizing the plaintiff and his automobile Ulmer instructed Unknown

378   Police #2 to call for K9 without a reason to believe, reasonable suspicion, or probable

379   cause to believe the Plaintiff or the Passenger was in possession of, or trafficking drugs.

380       9.   The Polices had no warrant or recognized justification for their warrantless

381   search, seizure and destruction of Plaintiff's automobile, their actions violated Plaintiff's

382   rights protected by the Fourth Amendment and Article 26 to be free from unreasonable

383   searches and seizures.

384       10. Unidentified Police #1 admitted that the Plaintiff didn't do anything to

385   initiate a stop by the police. Polices witnessed safety belts being worn after approaching

386   the automobile.

387       11. All Polices involved in this incident played a part and roll in assisting to

388   these counts by not upholding the constitution to which they swore an oath, not fulfilling

389   their duties to safeguard the lives and safety of all persons within the City of Baltimore,

390   to assist in securing to all persons the equal protection of the laws, to discharge its duties

391   and responsibilities with the dignity and manner which will inspire public confidence and

392   respect.

393       12. Baltimore City Police Depart and the Commissioner enacted or perpetuated a

394   policy, practice, or custom that encouraged such unconstitutional retaliation. Baltimore

395   City Police Department and the Commissioner have done so through explicit or implicit

396   instruction to the Polices within Baltimore City Police Department, or have acquired

397   knowledge of such a policy, practice, or custom and have not prevented its oppressive

398    exercise.

399        13. The Baltimore Police Department, Commissioner Anthony Batts, Mayor

400    Stephanie Rawlings-Blake, Governor Martin O'Malley caused these constitutional

401    violations by backing, enacting, and perpetuating a policy, practice and customs that

402    encourages and allows Polices to improperly enforce the law and have not prevented its

403    oppressive exercise.

404        14. As a result of the aforesaid violations, Plaintiff suffered damages including

405    emotional trauma, humiliation, distress, damage to personal property and assault and

406    arrest loss of liberty.

407                                    **Count IV, V**
408    **1983-Right to be free from deprivation of property without due process protected**
409    **under the Fourteenth Amendment and Constitution of Maryland, Declaration of**
410                                    **Rights Article 24**
411                                  **(Against All Defendants)**

412

413        15. Plaintiff incorporates the allegations made in paragraphs 1 to 40 in the cause

414    of complaint as if fully set forth herein.

415        16. Plaintiff asserts this claim against all defendants, including Police Officer

416    Ulmer and 6 Unknown Polices in both their official and personal capacities.

417        17. Article 24 of the Constitution of Maryland , Declaration of Rights states;

418    That no man ought to be taken or imprisoned or disseized of his freehold,

419    liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of

420    his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

421        18. Acting without a reason to believe, reasonable suspicion, probable cause or

422    warrant, Ulmer, 6 Unidentified Polices and K9 knowingly and willingly indulged in the

423    deprivation of the Plaintiffs liberty and property without due process during this traffic

424    stop.

425       19. No Police did had a reasonable suspicion based on an "specific and

426    articulable fact" to stop and detain the Plaintiff for almost an hour.

427       20. Ulmer didn't even act on a hunch when he indicated that he was going to call

428    K9. It was an already an established practice by the Baltimore City Police Department to

429    conduct such stop and searches.

430       21. Article 24 of the Maryland Declaration of Rights protects the same

431    freedoms protected by the Due Process Clause of the Fourteenth Amendment to the

432    United States Constitution.

433       22. Article 24 protects Plaintiff against deprivation of his property without

434    notice and an opportunity to be heard.

435       23. The Polices deprived Plaintiff of his personal property when they effectuated

436    this stop to search his automobile, more so when Ulmer assaulted the Plaintiff and taken

437    his keys.

438       24. The Polices had no warrant or recognized justification for their warrantless

439    search, seizure and destruction of Plaintiff's interior of his automobile, their actions

440    violated Plaintiff's rights protected by Article 24 to be free from deprivation of property

441    without due process.

442       25. Plaintiff was afforded no opportunity to contest these actions before they

443    occurred.

444       26. The Polices thus violated Plaintiff's right to pre-deprivation process

445    protected by Article 24 of the Maryland Declaration of Rights.

446      27. The Polices disseized the Plaintiff of his liberties and privileges and deprived

447   him of his life liberty and property in violation of Article 24.

448      28. All Polices involved in this incident played a part and roll in assisting to

449   these counts by not upholding the constitution to which they swore an oath, not fulfilling

450   their duties to safeguard the lives and safety of all persons within the City of Baltimore,

451   to assist in securing to all persons the equal protection of the laws, to discharge its duties

452   and responsibilities with the dignity and manner which will inspire public confidence and

453   respect.

454      29. Baltimore City Police Depart and the Commissioner enacted or perpetuated a

455   policy, practice, or custom that encouraged such unconstitutional retaliation. Baltimore

456   City Police Department and the Commissioner have done so through explicit or implicit

457   instruction to the Polices within Baltimore City Police Department, or have acquired

458   knowledge of such a policy, practice, or custom and have not prevented its oppressive

459   exercise.

460      30. The Baltimore Police Department, Commissioner Anthony Batts, Mayor

461   Stephanie Rawlings-Blake, Governor Martin O'Malley caused these constitutional

462   violations by backing, enacting, and perpetuating a policy, practice and customs that

463   encourages and allows Polices to improperly enforce the law and have not prevented its

464   oppressive exercise.

465      31. As a result of the aforesaid violations, Plaintiff suffered damages including

466   emotional trauma, humiliation, distress and damage to personal property.

467
468
469
470

18

| | |
|---|---|
| 471 | **Count VI** |
| 472 | **1983-The right to free-speech protected under the First and Fourteenth** |
| 473 | **Amendments, and Constitution of Maryland, Declaration of Rights Article 19 & 40** |
| 474 | **(Against All Defendants)** |

471                                         **Count VI**

472    **1983-The right to free-speech protected under the First and Fourteenth**

473   **Amendments, and Constitution of Maryland, Declaration of Rights Article 19 & 40**

474                               **(Against All Defendants)**

475         32. Plaintiff incorporates the allegations made in paragraphs 1 to 40 in the cause

476 of complaint as if fully set forth herein.

477         33. Plaintiff asserts this claim against all defendants, including Police Officer

478 Ulmer and 6 Unknown Polices and K9 in both their official and personal capacities

479         34. Article 40 of the Maryland Declaration of Rights protects the same

480 rights and freedoms protected by the First and Fourteenth Amendment to the United State

481 Constitution.

482         35. Observing and recording public police activities, by citizens without

483 interfering with those duties is a legitimate means of gathering information of public

484 concern for public dissemination and is therefore speech protected by the First

485 Amendment to the United States Constitution.

486         36. By detaining, arresting/issuing a citation to the  Plaintiff, the Polices

487 retaliated against Plaintiff for his free speech protected by Article 40, and attempted to

488 make him pay a price for exercising said rights to record public police activities.

489         37. Filing a complaint against a Police is a legitimate means of gathering

490 information of public concern for public dissemination and is therefore speech protected

491 by the First Amendment to the United States Constitution.

492         38. By Stg. Natalie Preston's disregard to her duties in taking a complaint from

493 the Plaintiff, she violated the Plaintiff right that every citizen of the State ought to be

494 allowed to speak, write and publish his sentiments on all subjects, being responsible for

495 the abuse of that privilege; That every man, for any injury done to him in his person or

496   property, ought to have remedy by the course of the Law of the Land, and ought to have

497   justice and right, freely without sale, fully without any denial, and speedily without delay,

498   according to the Law of the Land protected and protected by Articles 19 & 40.

499         39. All Polices involved in this incident played a part and roll in assisting to this

500   count by not upholding the constitution to which they swore an oath, not fulfilling their

501   duties to safeguard the lives and safety of all persons within the City of Baltimore, to

502   assist in securing to all persons the equal protection of the laws, to discharge its duties

503   and responsibilities with the dignity and manner which will inspire public confidence and

504   respect.

505         40. Baltimore City Police Depart and the Commissioner enacted or perpetuated a

506   policy, practice, or custom that encouraged such unconstitutional retaliation. Baltimore

507   City Police Department and the Commissioner have done so through explicit or implicit

508   instruction to the Polices within Baltimore City Police Department, or have acquired

509   knowledge of such a policy, practice, or custom and have not prevented its oppressive

510   exercise.

511         41. The Baltimore Police Department, Commissioner Anthony Batts, Mayor

512   Stephanie Rawlings-Blake, Governor Martin O'Malley caused these constitutional

513   violations by backing, enacting, and perpetuating a policy, practice and customs that

514   encourages and allows Polices to improperly enforce the law and have not prevented its

515   oppressive exercise.

516         42. As a result of the Polices retaliation against Plaintiff's constitutionally

517   protected speech, Plaintiff suffered damages including emotional trauma, humiliation,

518   distress and damage to person and personal property and loss of liberty

519                                   **Count VII, VIII**
520    **1983- Right to Choose and Right to Privacy protected under the Ninth Amendment**
521                                **(Against All Defendants)**
522

523            43. Plaintiff incorporates the allegations made in paragraphs 1 to 40 in the cause

524    of complaint as if fully set forth herein.

525            44. Plaintiff asserts this claim against all defendants, including Governor Martin

526    O'Malley in both their official and personal capacities.

527            45. The enumeration in the Constitution, of certain rights, shall not be construed

528    to deny or disparage others retained by the people.

529            46. Amendment Nine addresses rights, retained by the people that are not

530    specifically enumerated in the Constitution.

531            47. Although the Plaintiff was wearing his safety belt, it is his choice to whether

532    or not he wants to wear it.

533            48.  Statue § 22-412.3 Mandatory seat belt use, that infringes a person's Right to

534    Choose, and Privacy, where Polices use the statue as a means of probable cause for traffic

535    stops.

536            49. The Baltimore Police Department, Commissioner Anthony Batts and

537    Governor Martin O'Malley caused these constitutional violations by backing, enacting,

538    and perpetuating a policy, practice and customs that encourages and allows Polices to

539    violate a person's Right to Privacy and Choose and have not prevented its oppressive

540    exercise.

541            50. As a result of these violations, Plaintiff was deprived of his liberty, and caused

542    to suffer from the events that taken place as a result.

543

**Count IX**
**Assault & Battery**
**(Against All Defendants)**

544
545
546
547

548    51. Plaintiff incorporates the allegations made in paragraphs 1 to 40 in the cause

549    of complaint as if fully set forth herein.

550    52. Plaintiff asserts this claim against all defendants, including Police Officer

551    Ulmer in both their official and personal capacities.

552    53. Ulmer physically assaulted the Plaintiff during the course of the incident

553    described herein; he violently grabbed and shoved the plaintiff back into his seat while

554    taking the plaintiffs keys out of the ignition.

555    54. Numerous accounts of Baltimore City Police Polices being dragged by cars

556    have surfaced as a result of the Police being injured or killing the driver. This complaint

557    shows how such incidents are taken to those extremities by Polices when they attack

558    drivers threw windows.

559    55. Ulmer engaged in intentional acts of unlawful contact with Plaintiff such that

560    he sustained serious and permanent injuries. Moreover, the Police utilized unreasonable,

561    unlawful and excessive force during the course of the incident described herein.

562    56. Plaintiff did not consent to the described contact by Ulmer, nor did Plaintiff

563    in any way provoke, contribute to, or in any way present any cause for Ulmer to act as he

564    did, including the physical conduct sustained.

565    57. An illegal arrest is an assault & battery.

566    58. Ulmer issued 3 false tickets on expired Maryland Uniform Complaint and

567    Citation DR-49 form (Rev. 10/2005) with malice and intent.

568

569        59. The conduct of Ulmer was without legal justification to write false citations

570    and was improperly motivated by ill will and actual malice, hate and the desire to take the

571    Plaintiffs keys to detain, arrest and illegally conduct searches of his person and property

572    was without cause.

573        60. All Polices involved in this incident played a part and roll in assisting to the

574    assault & battery by not fulfilling their duties to safeguard the lives and safety of all

575    persons within the City of Baltimore, to protect property therein, and to assist in securing

576    to all persons the equal protection of the laws, to discharge its duties and responsibilities

577    with the dignity and manner which will inspire public confidence and respect.

578        61. Baltimore City Police Depart and the Commissioner enacted or perpetuated a

579    policy, practice, or custom that encouraged such unconstitutional retaliation. Baltimore

580    City Police Department and the Commissioner have done so through explicit or implicit

581    instruction to the Polices within Baltimore City Police Department, or have acquired

582    knowledge of such a policy, practice, or custom and have not prevented its oppressive

583    exercise.

584        62. The Baltimore Police Department, Commissioner Anthony Batts, Mayor

585    Stephanie Rawlings-Blake, Governor Martin O'Malley caused these constitutional

586    violations by backing, enacting, and perpetuating a policy, practice and customs that

587    encourages and allows Polices to improperly enforce the law and have not prevented its

588    oppressive exercise.

589        63. As a result of the assault & battery perpetrated by the defendants and Police

590    Ulmer, Plaintiff sustained significant physical, emotional and mental injuries. As a direct

591    and proximate consequence of Ulmer's actions, Plaintiff was deprived of his liberty,

592   caused to suffer extreme emotional distress which distress has manifested itself, for

593   example, by way of headaches, lack of sleep, fatigue, listlessness and nightmares, mental

594   injuries including fear for his life, humiliation, embarrassment, caused to lose time from

595   his work, damage to personal property and has suffered, and will continue to suffer,

596   economic loss due to sums of money spent to alleviate the injuries and damages that were

597   inflicted by the Polices.

598                                    **Count X, XI, XII**
599                       **False Arrest, Stalking, False Imprisonment**
600                                  **(Against All Defendants)**

601          64. Plaintiff incorporates the allegations made in paragraphs 1 to 40 in the cause

602   of complaint as if fully set forth herein.

603          65. Plaintiff asserts this claim against all defendants, including Police Officer

604   Ulmer in both their official and personal capacities.

605          66. The Polices had no legal or rational reason to believe Plaintiff had

606   engaged in any crime and were without probable cause to detain him against his will.

607   Plaintiff was, nevertheless, stalked, detained, issued false citations/arrested by the Polices

608   and made to sit on the curb next to a hot running police car in 103 degree heat in an

609   ordeal that lasted almost an hour.

610          67. After approaching the Plaintiffs automobile and noticing that safety belts

611   were in use, Ulmer falsely issued citations (arrests).

612          68. An arrest is the act of depriving a person of his or her liberty.

613          69. These acts were advanced by Ulmer, illegally and with improper motive to

614   punish Plaintiff for questioning his authority on the reason for the stop and filming the

615   Polices.

616       70. Willfully with malice and intent Ulmer held the Plaintiff against his will

617   taking his keys from his car, forcing him sit curb side of a running police jeep in 103

618   degree heat and  issuing 3 citations on Expired Maryland Uniform Complaint and

619   Citation form DR-49 forms (Rev. 10/2005).

620       71. The issuance of a citation is an arrest "Arrest type A" according to the

621   District Court Transportation Articles if made by marked patrol car.

622       72. The fact that Ulmer issued these citations on Expired DR-49 forms further

623   shows malicious and ill willed attempts to punish the Plaintiff that lead to the Plaintiffs

624   suspended license.

625       73. Ulmer purposely delayed the writing of citations to wait for K9 to arrive with

626   no reasonable suspicion or probable cause to search the Plaintiffs automobile.

627       74. The arrest/citations detainment perpetrated by the Polices was without

628   warrant, without legal or logical justification, and without probable cause necessary to

629   support a lawful arrest/citation. Ulmer saw that's safety belts were worn and wrote

630   citations anyway.

631       75.  The Polices conduct demonstrates their ill will, improper motive, hate and

632   actual malice, all as aforesaid.

633       76. As a direct and proximate consequence of the Polices' actions, Plaintiff

634   was deprived of his liberty, and property caused to suffer permanent emotional and

635   mental injuries, caused to lose time from his work and has suffered, and will continue to

636   suffer, economic loss due to sums of money spent to alleviate the injuries and damages

637   that were inflicted by the Polices.

638

25

639        77. The foregoing conduct of the Polices, who acted together, was extreme,

640    outrageous and beyond the bounds of decency in society.

641        78. All Polices involved in this incident played a part and roll in assisting to the

642    false arrest, stalking and false imprisonment by not fulfilling their duties to safeguard the

643    lives and safety of all persons within the City of Baltimore, to protect property therein,

644    and to assist in securing to all persons the equal protection of the laws, to discharge its

645    duties and responsibilities with the dignity and manner which will inspire public

646    confidence and respect.

647        79. Baltimore City Police Depart and the Commissioner enacted or perpetuated a

648    policy, practice, or custom that encouraged such unconstitutional behavior. Baltimore

649    City Police Department and the Commissioner have done so through explicit or implicit

650    instruction to the Polices within Baltimore City Police Department, or have acquired

651    knowledge of such a policy, practice, or custom and have not prevented its exercise.

652        80. The Baltimore Police Department, Commissioner Anthony Batts, Mayor

653    Stephanie Rawlings-Blake, Governor Martin O'Malley caused these constitutional

654    violations by backing, enacting, and perpetuating a policy, practice and customs that

655    encourages and allows Polices to improperly enforce the law and have not prevented its

656    oppressive exercise.

657        81. In addition, because the conduct, patterns, and practices of illegal arrests are

658    ongoing, it is likely that the Plaintiff will suffer damages as an actual and proximate

659    result of similar conduct, patterns, and practices in the future.

660        82. As a result of the False Arrest, Stalking and False Imprisonment by the

661    defendants and Ulmer, Plaintiff sustained significant physical, emotional and mental

26

662  injuries. As a direct and proximate consequence of Ulmer's actions, Plaintiff was

663  deprived of his liberty, caused to suffer extreme emotional distress which distress has

664  manifested itself, for example, by way of headaches, lack of sleep, fatigue, listlessness

665  and nightmares, mental injuries including fear for his life, humiliation, embarrassment,

666  caused to lose time from his work, damage to personal property and has suffered, and

667  will continue to suffer, economic loss due to sums of money spent to alleviate the injuries

668  and damages that were inflicted by the Polices.

669
670
671
672
673

**Count XIII, XIV.**
**False Light and Harassment**
**(Against All Defendants)**

674  83. Plaintiff incorporates the allegations made in paragraphs 1 to 40 in the cause

675  of complaint as if fully set forth herein.

676  84. Plaintiff asserts this claim against all defendants, including Police Officer

677  Ulmer in both their official and personal capacities.

678  85. As a result of Ulmer's intentional, ill willed harassment and malicious

679  attempts to incriminate the Plaintiff during his illegal detainment he was put in a false

680  light.

681  86. The public humiliation and embarrassment the Plaintiff endured while being

682  forced to sit on the curb in front of witnesses and bystanders while his car was being

683  illegally searched was highly offensive placed the plaintiff in a false light as if he was

684  involved in criminal activity.

685  87. Ulmer issued 3 citations against the Plaintiff with intentional ill will and

686  malice falsely accusing the plaintiff leaving him subject to publication on Maryland

687  Judiciary Case Search that is not able to be expunged.

27

688     88. Ulmer maliciously engaged in a course of conduct that alarmed and seriously

689     annoyed the Plaintiff without legal purpose.

690     89. The Plaintiff has endured similar types of acts before from the Baltimore

691     City Police Department from its illegal practices and policies it implies.

692     90. The foregoing conduct of the Polices, who acted together, was extreme,

693     outrageous and beyond the bounds of decency in society.

694     91. All Polices involved in this incident played a part and roll in assisting to the

695     false light and harassment, not fulfilling their duties to safeguard the lives and safety of

696     all persons within the City of Baltimore, to assist in securing to all persons the equal

697     protection of the laws, to discharge its duties and responsibilities with the dignity and

698     manner which will inspire public confidence and respect.

699     92. Baltimore City Police Depart and the Commissioner enacted or perpetuated a

700     policy, practice, or custom that encouraged such unconstitutional behavior. Baltimore

701     City Police Department and the Commissioner have done so through explicit or implicit

702     instruction to the Polices within Baltimore City Police Department, or have acquired

703     knowledge of such a policy, practice, or custom and have not prevented its oppressive

704     exercise.

705     93. The Baltimore Police Department, Commissioner Anthony Batts, Mayor

706     Stephanie Rawlings-Blake, Governor Martin O'Malley caused these constitutional

707     violations by backing, enacting, and perpetuating a policy, practice and customs that

708     encourages and allows Polices to improperly enforce the law and have not prevented its

709     oppressive exercise.

710

711       94. As a result of the False light and Harassment by the defendants and Police

712   Ulmer, Plaintiff sustained significant physical, emotional and mental injuries. As a direct

713   and proximate consequence of Ulmer's actions, Plaintiff was deprived of his liberty,

714   caused to suffer extreme emotional distress which distress has manifested itself, for

715   example, by way of headaches, lack of sleep, fatigue, listlessness and nightmares, mental

716   injuries including fear for his life, humiliation, embarrassment, caused to lose time from

717   his work, damage to personal property and has suffered, and will continue to suffer,

718   economic loss due to sums of money spent to alleviate the injuries and damages that were

719   inflicted by the Polices.

720                    **Count XV, XVI, XVII**
721       **Illegal Search & Seizure, Invasion of Privacy and Conversion**
722                        **(Against All Defendants)**
723

724       95. Plaintiff incorporates the allegations made in paragraphs 1 to 40 in the cause

725   of complaint as if fully set forth herein.

726       96. Plaintiff asserts this claim against all defendants, including Ulmer in both their

727   official and personal capacities.

728       97. This routine traffic stop was a "search incident to citation" where

729   various rights were violated and laws were broken by police.

730       98. The Polices had no reason to believe, reasonable suspicion, probable cause

731   or warrant to illegally search and seize the Plaintiff and his Property while commencing

732   in conversion and invading his privacy.

733       99. Unknown Police #1 stated during the traffic stop that the Plaintiff "didn't do

734   anything".

735

736   100. Ulmer already had it in his mind that he was going to call K9 before the

737 Plaintiff was able to furnish Unknown Police #1 with his license and registration.

738   101. Plaintiff was cited for seat belt and cellphone violations, civil offenses for

739 which police could not expect to find evidence of in the car.

740   102. Plaintiff expressed several times that he did not consent to searches.

741   103. Automobile owners have a reasonable expectation of privacy in the cars

742 they own and drive.

743   104. Being a private person, owing private property it's a right and it's to be

744 expected.

745   105. The Plaintiff has endured similar types of acts before from the Baltimore

746 City Police Department from its illegal practices and policies it implies.

747   106. Ulmer violated the Plaintiffs right to that privacy when he and

748 Unidentified Police #1 used a show of force to threaten and make the Plaintiff roll his

749 window down, so that Ulmer could climb through the window assaulting the Plaintiff and

750 taking his keys, an act of intrusion of solitude.

751   107. Unknown Police #1 violated the Plaintiffs right to privacy when used his

752 personal cell phone to record the Plaintiff and Passenger sitting on the curb.

753   108. The Plaintiff has endured similar types of acts before from the Baltimore

754 City Police Department from its illegal practices and policies it implies.

755   109. The foregoing conduct of the Polices, who acted together, was extreme,

756 outrageous and beyond the bounds of decency in society.

757   110. All Polices involved in this incident played a part and roll in assisting to

758 the false light and harassment, not fulfilling their duties to safeguard the lives and safety

759   of all persons within the City of Baltimore, to assist in securing to all persons the equal

760   protection of the laws, to discharge its duties and responsibilities with the dignity and

761   manner which will inspire public confidence and respect.

762        111.   Baltimore City Police Depart and the Commissioner enacted or

763   perpetuated a policy, practice, or custom that encouraged such unconstitutional behavior.

764   Baltimore City Police Department and the Commissioner have done so through explicit

765   or implicit instruction to the Polices within Baltimore City Police Department, or have

766   acquired knowledge of such a policy, practice, or custom and have not prevented its

767   oppressive exercise.

768        112.   The Baltimore Police Department, Commissioner Anthony Batts, Mayor

769   Stephanie Rawlings-Blake, Governor Martin O'Malley caused these constitutional

770   violations by backing, enacting, and perpetuating a policy, practice and customs that

771   encourages and allows Polices to improperly enforce the law and have not prevented its

772   oppressive exercise.

773        113.   In addition, because the conduct, patterns, and practices of unreasonable

774   searches and seizures and invasion of privacy are ongoing, it is likely that the Plaintiff

775   will suffer damages as an actual and proximate result of similar conduct, patterns, and

776   practices in the future

777        114.   As a result of the Defendants' violation of Plaintiff's right to be free from

778   unreasonable searches and seizures, invasion of privacy and conversion, Plaintiff

779   sustained significant physical, emotional and mental injuries. As a direct and proximate

780   consequence of Ulmer's actions, Plaintiff was deprived of his liberty, caused to suffer

781   permanent emotional and mental injuries, humiliation, embarrassment and distress,

782   caused to lose time from his work, damage to personal property and has suffered, and

783   will continue to suffer, economic loss due to sums of money spent to alleviate the injuries

784   and damages that were inflicted by the Polices.

785               **Count XVIII, XIX, XX**
786   **Gross Negligence, Actual Malice and Intentional Infliction of Emotional Distress &**
787                        **Embarrassment**
788                  **(Against All Defendants)**
789

790        115.   Plaintiff incorporates the allegations made in paragraphs 1 to 40 in the

791   cause of complaint as if fully set forth herein.

792        116.   Plaintiff asserts this claim against all defendants, including Police Officer

793   Ulmer in both their official and personal capacities.

794        117.   The Polices while conducting this traffic stop acted with Gross

795   Negligence, Malice and Intentional Infliction to cause Emotional Distress and

796   Embarrassment to the Plaintiff while engaging in all previously stated counts.

797        118.   Ulmer physically assaulted the Plaintiff violently grabbing

798   and shoved the Plaintiff back into his seat acting with gross negligence intentionally

799   inflicting emotional distress & embarrassment.

800        119.   Ulmer knowingly and willingly with actual malice issued 3 citations with

801   no regard to the truth.

802        120.   Ulmer acted with gross negligence when failing to do his duty as an Police

803   of the law stating to the Plaintiff that "he didn't care" if the Plaintiff felt safe, not

804   fulfilling his duties to safeguard the lives and safety of all persons within the City of

805   Baltimore, to assist in securing to all persons the equal protection of the laws, to

806   discharge his duties and responsibilities with the dignity and manner which will inspire

807   public confidence and respect.

808       121.   Unknown Police #1 intentionally inflicted emotional distress and

809   embarrassment having recorded the Plaintiff and Passenger sitting on the curb in

810   retaliation with his personal cell phone.

811       122.   The Polices intentionally inflicted emotional distress and

812   embarrassment having treated Plaintiff and Passenger as criminals in the eyes of the

813   public being forced to sit on the curb in front of witnesses and bystanders while his car

814   was being illegally searched was highly offensive oppressive and unjust.

815       123.   The Plaintiff has endured similar types of acts before from the Baltimore

816   City Police Department from its illegal practices and policies it implies.

817       124.   The foregoing conduct of the Polices, who acted together, was extreme,

818   outrageous and beyond the bounds of decency in society.

819       125.   All Polices involved in this incident played a part and roll in assisting to

820   the Gross Negligence, Actual Malice and Intentional Infliction of Emotional Distress &

821   Embarrassment, not fulfilling their duties to safeguard the lives and safety of all persons

822   within the City of Baltimore, to assist in securing to all persons the equal protection of

823   the laws, to discharge its duties and responsibilities with the dignity and manner which

824   will inspire public confidence and respect.

825       126.   Baltimore City Police Depart and the Commissioner enacted or

826   perpetuated a policy, practice, or custom that encouraged such unconstitutional behavior.

827   Baltimore City Police Department and the Commissioner have done so through explicit

828   or implicit instruction to the Polices within Baltimore City Police Department, or have

829   acquired knowledge of such a policy, practice, or custom and have not prevented its

830   oppressive exercise.

831       127.   The Baltimore Police Department, Commissioner Anthony Batts, Mayor

832   Stephanie Rawlings-Blake, Governor Martin O'Malley caused these constitutional

833   violations by backing, enacting, and perpetuating a policy, practice and customs that

834   encourages and allows Polices to improperly enforce the law and have not prevented its

835   oppressive exercise.

836       128.   As a result of the Gross Negligence, Actual Malice and Intentional

837   Infliction of Emotional Distress & Embarrassment by the defendants and

838   Ulmer, Plaintiff sustained significant physical, emotional and mental injuries. As a direct

839   and proximate consequence of Ulmer's actions, Plaintiff was deprived of his liberty,

840   caused to suffer  extreme emotional distress which distress has manifested itself, for

841   example, by way of headaches, lack of sleep, fatigue, listlessness and nightmares, mental

842   injuries including fear for his life, humiliation, embarrassment, caused to lose time from

843   his work, damage to personal property and has suffered, and will continue to suffer,

844   economic loss due to sums of money spent to alleviate the injuries and damages that were

845   inflicted by the Polices.

846

847

848                         **DEMAND FOR JURY TRIAL**

849       Plaintiff right to Trial by Jury is protected under the Constitution of Maryland,

850   Declaration of Rights Article 5(b) and is respectfully demanded.

851

852

34

**CLAIMS FOR RELIEF**

WHEREFORE, on Counts I through XX Plaintiff respectfully request that this honorable

Court grant to him the following relief:

      A.  Declaratory judgment that:

1.  Declare that defendants acts violate the Fourth and the Fourteenth
    Amendments to the U.S. Constitution;

2.  Declare that defendants acts violate Articles 24,26, and 40 of the Constitution
    of Maryland, Declaration of rights;

3.  Declare that statue § 22-412.3. Mandatory seat belt use is oppressive and
    unconstitutional and violates a person's right to privacy and right to choose
    protected under the 9th amendment of the U.S. Constitution.

4.  Declare that the right to privacy in one's automobile is no different than one's
    home or any other consumer good or private property that would require a
    warrant before its search.

5.  Ulmer retaliated against Plaintiff by assaulting him, detaining him, issuing 3
    false citations and infringed upon his right to privacy, free speech, protected
    by the First and Ninth Amendment and Article 40 of the Maryland
    Declaration of Rights, and his right to be free from unreasonable searches and
    seizures protected by the Fourth Amendment and Article 26, and his right to
    be  free from be taken or imprisoned or disseized of his freehold, liberties or
    privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of
    his life, liberty or property, but by the judgment of his peers, or by the Law of
    the land protected by Article 24 of Maryland Declaration of Rights;

877  6. A permanent injunction that bars the All Polices in Maryland and Polices of

878    the BCPD from using seatbelt or cellphone statues for use of probable cause

879    to effectuate traffic stops;

880  7. A permanent injunction that bars the use of K9's in traffic stops to engage in

881    searches and declare K9's as an unreliable sources and means to initiate a

882    search.

883

884  B. With regard to the emotional trauma, humiliation, distress, bodily injury

885    and damage to personal property that Plaintiff suffered from the acts of the

886    Defendants, Plaintiff claims damages as follows:

887

888  8. As to the acts carried out under the auspices of a policy or practice of BCPD

889    and the Commissioner resulting in violations of Plaintiff's federal protected

890    constitutional rights, Plaintiff seeks compensatory damages against BCPD, the

891    Commissioner and the Polices in their official capacities, jointly and several,

892    in an amount to be determined at trial, but not less than Five Hundred

893    Thousand Dollars ($500,000).

894

895  9. As to the acts resulting in violations of Plaintiff's federal protected

896    constitutional rights, Plaintiff seeks compensatory and punitive damages

897    against the Polices in their individual capacities, jointly and several, in an

898    amount to be determined at trial, but not less than Five Hundred Thousand

899    Dollars ($500,000).

900   10. As to the acts resulting in violations of Plaintiff's federal protected

901    constitutional rights, Plaintiff seeks compensatory and punitive damages

902    against Mayor & City Council of Baltimore ("City") Stephanie Rawlings-

903    Blake, jointly and severally, in an amount to be determined at trial, but not

904    less than Five Hundred Thousand Dollars ($500,000).

905

906   11. As to the acts resulting in violations of Plaintiff's state protected constitutional

907    and common law rights, Plaintiff seek compensatory and punitive damages

908    from the Polices, jointly and severally, in an amount to be determined at trial,

909    but not less than Five Hundred Thousand Dollars ($500,000).

910

911   12. As to the acts resulting in violations of Plaintiff's state constitutional

912    and common law rights, Plaintiff seek compensatory and punitive damages

913    from Mayor & City Council of Baltimore (City) Stephanie Rawlings-Blake,

914    jointly and severally, in an amount to be determined at trial, but not less than

915    Five Hundred Thousand Dollars ($500,000).

916

917   13. As to all acts and omissions resulting in violations of the Plaintiffs Rights by

918    Baltimore City Police Department a State Agency,  Plaintiff seeks

919    compensatory and punitive damages from Governor Martin O'Malley & The

920    State of Maryland jointly and severally, in an amount to be determined at trial,

921    but not less than Five Hundred Thousand Dollars ($500,000).

922

37

923            14. As to the personal acts carried out by Ulmer, Plaintiff seeks compensatory and

924                  punitive damages from Ulmer and Baltimore City Police Department jointly

925                  and severally, in an amount to be determined at trial, but not less than Five

926                  Hundred Thousand Dollars ($500,000).

927

928            15. Any other relief as this honorable Court may deem just and deserving.

929

930                                          Respectfully submitted,

931                                           Darrell Harris

932                                      3302 Parkside Drive

933                                  Baltimore, Maryland 21214

934                                      410-807-1503(p)

935                                      443-632-9343(f)

936                                    darrellrealty@aol.com

937

938                       **Certificate of Service**

939      I, Darrell Harris certify that on June 16th 2014, I served the attached complaint by U.S. Mail

940      upon the following defendants:

941

Police Nathan Ulmer             Mayor & City Council
1900 Argonne Drive              100 North Holliday Street #250
Baltimore, Maryland 21218      Baltimore, Maryland 21202

Baltimore City Police Department   Governor Martin O'Malley
601 E. Fayette Street           100 State Circle,
Baltimore, Maryland 21201      Annapolis, MD 21401