## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DARRELL P. HARRIS** | * | |
| **Plaintiff,** | * | |
| **vs.** | * | **Civil Action No. 1:14−cv−02470−RDB** |
| **BALTIMORE POLICE** | * | |
| **DEPARTMENT.,** *et al.*, | * | |
| **Defendants.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### DEFENDANT BALTIMORE POLICE DEPARTMENT'S
### REPLY IN SUPPORT OF ITS MOTION TO DISMISS

### I.  INTRODUCTION

Defendants Baltimore Police Department ("BPD") and Commissioner Anthony W. Batts ("Commissioner Batts"), submit this brief response to the opposition papers filed by Plaintiff, Darrell P. Harris, to their Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)("Rule 12(b)(6)").  *Cf. ECF Paper No. 26 and ECF Paper No. 24.*  In addition to the reasons set forth in Defendants' original motion papers, Plaintiff's opposition papers (including importantly, the evidence that he has submitted in connection with those papers) now confirm that his Complaint cannot state a *plausible* federal constitutional claim, under any theory, for the following reasons[1]:

• The underlying traffic stop of Plaintiff's automobile was constitutional under the Fourth Amendment, as the evidence submitted by Mr. Harris verifies that BPD officers stopped him for a seatbelt violation;

---

[1]  The Court may convert Defendants' Rule 12(b)(6) motion into a motion for summary judgment under Fed. Rule Civ, Proc. 56 ("Rule 56"), to the extent that it is considering the materials outside of the pleadings submitted by Plaintiff in in his opposition papers. *See* Fed. R. Civ. Proc. 12(d)(2014).

• The forcible removal of Plaintiff's keys from the ignition of the car was not an unreasonable seizure for Fourth Amendment purposes, because officers could remove the keys to insure that Plaintiff did not drive off, or run over them during the traffic stop;

• The K-9 dog's scan and alert on Plaintiff's car was constitutional under the Fourth Amendment, as Mr. Harris contributed to the delay in the traffic stop, BPD officers were still writing his ticket during the K-9 dog scan, and BPD officers had probable cause to search the car once the K-9 dog alerted for drugs.

A.   **THE TRAFFIC STOP OF MR. HARRIS' CAR WAS CONSTITUTIONAL UNDER THE FOURTH AMENDMENT, AS PLAINTIFF'S OWN EVIDENCE SUPPORTS THE REASON FOR THE STOP.**

Mr. Harris is plainly wrong when he argues that BPD Officers did not have probable cause to stop of his vehicle, because his opposition papers show that he committed a traffic violation in the officer's presence.  Mr. Harris correctly states that a person may not operate a motor vehicle unless the person and each occupant under 16 years old are restrained by a seat belt.  Md. Code Ann., Transp., §22-412.3(b) (2014).  However, Mr. Harris fails to acknowledge the applicable definitions of "seat belt," which includes a combination seat belt and shoulder harness.  *See* Md. Code Ann., Transp. §22-412.3(a)(i),(ii)(2014).  Thus, it is a violation of §22-412.3(b) of the Transportation Article for a driver of an automobile to operate it while not properly restrained by the shoulder harness.  *See* Md. Code Ann., Transp., §22-412.3(b);

As stated in Commissioner Batts' original motion papers, it is well established law that a traffic stop is justified under the Fourth Amendment where the officer observes a traffic violation.  *See Whren v. United States*, 517 U.S. 806,  812- 813 (1996); *Johnson v. Crooks*, 326 F.3d 995, 997-999 (8th Cir. 2003); *see also Fersner v. Prince George's County Md.,* 138

F.Supp.2d 685, 691 (D. Md. 2001).   Because a police officer's subjective intentions are irrelevant to the question of whether probable cause existed for a traffic stop, the Court must review the record before it *objectively* to determine whether any Fourth Amendment violation has occurred (emphasis added).   *See Whren*, 517 U.S. at 810; *Johnson*, 326 F.3d at 997; *Fersner*, 138 F.Supp.2d at 691.

Here, Mr. Harris' own evidence contradicts the assertion in his Complaint that the traffic stop of his car was unreasonable under the Fourth Amendment.   *See ECF Paper No. 22, Exhibit B at 1:49, 2:03 (DVD Recording)*.   In the DVD recording of the alleged traffic stop, Mr. Harris is clearly not utilizing his seatbelt properly, as the shoulder harness is behind his back.   *See Id.* Moreover, BPD officers clearly articulate to him the reasons behind the traffic stop.   *See Id.* Therefore, because the objective record before the Court conclusively demonstrates that BPD officers had probable cause to stop Mr. Harris' car, they could not have violated his Fourth Amendment rights.   Since there is no underlying Fourth Amendment violation against the BPD Officers for the stop of Plaintiff's vehicle, the Court should also conclude that no Fourth Amendment constitutional claim lies against Commissioner Batts or BPD.

**B.      REMOVING THE KEYS FROM THE IGNITION OF PLAINTIFF'S CAR WAS REASONBABLE UNDER THE FOURTH AMENDMENT.**

The Court may disregard  Mr. Harris' grievance that BPD officers unlawfully removed his keys from his car, because  a lawful roadside traffic stop under the Fourth Amendment authorizes law enforcement officers to take necessarily precautions, including taking control over the driver and passengers of the car for officer safety.   The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop.  *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).   Thus, the need for officers to exercise control over individuals encountered during a traffic stop, outweighs the marginal intrusion on driver's and

the passenger's liberty interest. *See Maryland v. Wilson*, 519 U.S. 408, 413 (1997)("On the public interest side of the balance, the same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger. Regrettably, traffic stops may be dangerous encounters."); *see also Pennsylvania v. Mimms,* 434 U.S. 106, 111 (1977)("What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.").

Indeed, the Supreme Court has characterized the additional intrusion of asking the driver or passenger to step outside the car during a valid traffic stop as "*de minimis*" or "minimal." *Wilson*, 519 U.S. at 114-115 ("In summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal."); *Mimms*, 434 U.S. at 111 (We think this additional intrusion can only be described as *de minimis*. The driver is being asked to expose to view very little more of his person than is already exposed.").

Here, it is clear that the BPD officers had a need to exercise control over their traffic stop of Mr. Harris' car, as evidenced by Plaintiff's own video evidence documenting his behavior. *See ECF Paper No. 22, Ex. B, Title 1-3 (DVD recording).* At the time of the removal of the keys, the traffic stop was in effect and was not over. The removal of the keys was completely reasonable under the Fourth Amendment, as it ensured that the Plaintiff's car remained stopped during the entire traffic stop, *i.e.*, he could not drive away and possibly injure an officer or citizen in the process. Put simply, the intrusion of taking the keys out of Mr. Harris' car was a *de minimis* constitutional intrusion, at best, and that action cannot form the basis of a viable Fourth Amendment claim.

**C.    THE K-9 DOG SCAN OF MR. HARRIS' CAR WAS CONSTITUTIONAL UNDER THE FOURTH AMENDMENT, AS MR. HARRIS CONTRIBUTED TO THE DELAY OF THE TRAFFIC STOP, BPD OFFICERS WERE STILL A WRITING TICKET AT THE TIME OF THE SCAN, AND THEY HAD PROBABLE CAUSE TO SEARCH PLAINTIFF'S CAR ONCE THE K-9 DOG ALERTED FOR DRUGS.**

Finally, the Court may quickly dispose of the Plaintiff's constitutional challenge to the K-9 scan of his vehicle.  As stated in Commissioner Batts' original motion papers, it is well settled that a K-9 scan around the perimeter of an automobile *is not* a search for Fourth Amendment purposes.     *Illinois v. Caballes*, 543 U.S. 405, 410 (2005)(" In this case, the dog sniff was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation. Any intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement.").

A K-9 scan can turn into a violation of the Fourth Amendment where it is unnecessarily delayed.  *United States v. Green*, 740 F.3d 275, 280 (4th Cir. 2014)( "… a stop may become unlawful if it is prolonged beyond the time reasonably required to complete [its] mission,…" (quoting *Illinois v. Caballes*, 543 U.S. at 407)).  However, "[w]hen a defendant's own conduct contributes to a delay, he or she may not complain that the resulting delay is unreasonable."  *U.S. v. Shareef*, 100 F.3d 1491 at 1502 (10th Cir. 1996)(citing *United States v. Sharpe,* 470 U.S. 675, 699–700 (1985) (Marshall, concurring));  *see also U.S. v. Jones,* 44 F.3d 860 at 872 (10th Cir. 1995).

Lastly, as also stated in Commissioner Batts' original motion papers, it is also well settled that an alert by a properly trained K-9 dog gives law enforcement officers "probable cause" to search the car for drugs.  *See Florida v. Harris,* ___ U.S. ___, 133 S.Ct. 1050, 1057 (2013)( "For that reason, evidence of a dog's satisfactory performance in a certification or training program

can itself provide sufficient reason to trust his alert. If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search."); *United States v. Green*, 730 F.3d at 283 ("Applying this framework, we conclude that the district court correctly held that Bono was sufficiently reliable and that his positive alert provided probable cause for the search of Green's vehicle.")

The Court can, again, look to the evidence submitted by Mr. Harris, himself, to assist in its Fourth Amendment analysis. *See ECF Paper No. 22, Ex. B (DVD recording).* Plaintiff's own recording of the stop shows that the K-9 arrived while the officer was still writing the tickets. *See Id., Title 3 at 2:10.* Additionally, as seen on the DVD, Plaintiff asked his passenger to call 911 to make a supervisor complaint. *See Id., Title 1 at 2:25.* Thus, Plaintiff's own evidence shows that the K-9 dog arrived at the scene before the traffic stop was over, but also before the complete resolution of the Plaintiff's own complaint, which caused a BPD supervisor to respond to the scene. *Id., Title 3 at 4:08.* In other words, Plaintiff's own request for a BPD supervisor, if anything, delayed the traffic stop.

Again, the Complaint concedes that the K-9 dog alerted on Mr. Harris' car. *ECF Paper No. 2, Complaint, p. 10, ¶¶ 18-20.* In addition, Plaintiff's recording of the stop with his cellular telephone also documents the K-9 dog's alert. *See ECF Paper No. 22, Ex. B, Title 3 (DVD recording).* Thus, there is no doubt that BPD officers had probable cause to search Mr. Harris' vehicle because of the K-9 dog alert for drugs. *ECF Paper No. 2, Complaint, p. 10, ¶¶ 18-20.* The Complaint fails to state a Fourth Amendment claim to the extent that it is based upon the search of Plaintiff's car.

## CONCLUSION

The Court should grant BPD's and Commissioner Batts' Rule 12(b)(6) motion.

Respectfully submitted,

_____/s/_____
Glenn T. Marrow
Federal Bar No.: 23731
Chief Solicitor and Deputy Chief Counsel
Email: glenn.marrow@baltimorepolice.org


_____/s/_____
Dorrell A. Brooks
Federal Bar No.: 27058
Assistant City Solicitor
Email: dorrell.brooks@baltimorepolice.org

_____/s/_____
Kristen Hitchner
Federal Bar No.: 19306
Assistant City Solicitor
Email:  kristen.hitchner@baltimorepolice.org

Baltimore City Law Department
Office of Legal Affairs
100 North Holiday Street, Room 101
Baltimore, Maryland 21202
Telephone: (410) 396-2496
Facsimile:  (410) 396-2126
*Attorney for Defendants Baltimore Police
Department and Commissioner Batts*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 8th day of September, a copy of the foregoing Defendant Baltimore Police Department's Reply Memorandum in Support of Its Motion to Dismiss was served, via the electronic filing system of the United States District Court, as well as served by First Class Mail, postage prepaid on the person listed below.

**Darrell P. Harris**
3302 Parkside Drive
Baltimore, MD 21214

_____/s/_____
Glenn T. Marrow
Federal Bar No.: 23731