2015 MAR 24   AM II: 43

VL

# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| Darrell P. Harris | * |
| 3302 Parkside Drive | *  Case No: 1:14-CV-2470 |
| Baltimore, Maryland 21214 | * |
| **Plaintiff** *(In propria persona)* | *  **AMENDED COMPLAINT** |
| V. | * |
| | * |
| BALTIMORE CITY POLICE | * |
| DEPARTMENT | * |
| 601 E. Fayette Street | *  [DEMAND FOR JURY TRIAL] |
| Baltimore, Maryland 21201; | * |
| | * |
| and | * |
| | * |
| ANTHONY W. BATTS | * |
| In his official capacity as | * |
| Commissioner of The Baltimore City | * |
| Police Department | * |
| | * |
| and | * |
| | * |
| POLICE NATHAN NATHAN | * |
| ULMER | * |
| In both his official and individual | * |
| capacity as an Police of the | * |
| Baltimore City Police Department | * |
| | * |
| and | * |
| | * |
| | * |
| SERGEANT NATALIE PRESTON | * |
| In both her official and individual | * |
| capacity as an Police of the | * |
| Baltimore City Police Department | * |
| | * |
| and | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |

```
                                          *
1    MAYOR & CITY COUNCIL                  *
2    OF BALTIMORE ("CITY")                 *
3    STEPHANIE RAWLINGS-BLAKE              *
4    In both their official and individual *
5    capacities.                           *
6                                          *
7    and                                   *
8                                          *
9    GOVERNOR & THE STATE                  *
10   MARYLAND                              *
11   MARTIN O'MALLEY                       *
12   In both his official and individual   *
13   Capacity as Governor                  *
14   Defendants                            *
15                                         *
16                                         *.
17                                         *
18   ******* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ***
19
```

20          <u>**CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

21

22          NOW COMES THE plaintiff, Darrell P. Harris in Pro Per (hereinafter "Plaintiff") an alleges this

23   Complaint hereby suing the defendants herein to redress violations of his civil and legal rights under the

24   Constitution of Maryland Articles 2, 5, 19, 24, 26, United States Constitution Amendments 1, 4, 7, 9, 14,

25   as well as 42 U.S.C. § 1983, 18 U.S.C. § 242, Plaintiff states as follows:

26

27          <u>**NATURE OF THE ACTION**</u>

28          This is an action for violations by members of the BCPD of the rights protected to a citizen of

29   the United States and the State of Maryland under the Constitution of the United States and the

30   Constitution of Maryland Declaration of Rights including claims brought under 42 U.S.C. § 1983 for

31   violations while under the color of law;

1  • The right to be free from unreasonable searches and seizures protected under the Fourth and

2  Fourteenth Amendments and Article 26 of the Constitution of Maryland, Declaration of Rights.

3  • The right to be free from deprivation of property without due process protected under the

4  Fourteenth Amendment and Constitution of Maryland, Declaration of Rights Articles, 24 and 46.

5  • The right to free-speech protected under the First and Fourteenth Amendments, and Constitution

6  of Maryland, Declaration of Rights Article 40.

7  • Assault & Battery, False Arrest, Stalking and False Imprisonment.

8  • False Light and Harassment.

9  • Illegal Search & Seizure, Invasion of Privacy and Conversion.

10 • Gross Negligence, Actual Malice and Intentional Infliction of Emotional Distress &

11 Embarrassment

12

13 **JURISDICTION AND VENUE**
14

15 This action is brought pursuant to the Constitution of Maryland Articles 2, 5b, 24, 25, 46, 18

16 U.S.C. § 242, 42 U.S.C. § 1983, §1988 and the Fourth, Fifth and Fourteenth Amendments to the United

17 States Constitution for which Jurisdiction is found and runs concurrent. Cause of action arising from

18 conduct in State. The Circuit Court has exclusive jurisdiction over a large claim action, which, for

19 purposes of this section, means a civil action for money in which the amount claimed may exceed

20 $5,000 exclusive of interest, costs, and attorney's fees, if attorney's fees are recoverable by law or

21 contract. Pursuant to the Annotated Code of Maryland, Courts & Judicial Proceedings Article, § 6-102

22 and§ 6-103, jurisdiction and venue of this matter is proper before the Circuit Court for Baltimore City.

23

1   At all times relevant herein, the Plaintiff was an inhabitant of Baltimore City, Maryland. At all

2 times relevant herein, the Defendants were performing their Official duties employed in Baltimore City,

3 Maryland when these tortuous acts where performed.

4            **PARTIES**

5   1. Plaintiff, (Darrell P. Harris) is an inhabitant of Maryland with a residence at 3302 Parkside

6 Drive, Baltimore, Maryland 21214. He is employed as a Mail Clerk with the United States Postal

7 Service and is a Licensed Real Estate Agent. He is a person within the meaning of the Maryland

8 Declaration of Rights and the Constitution of the United States and has been injured and risk further

9 harm as a result of the illegal acts and omissions by the Defendants.

10   2. At all times relevant to this Complaint, Nathan Ulmer was a duly authorized agent, servant

11 and employee of BCPD, working from the Northeast District. Police Nathan Ulmer is sued in his official

12 and individual capacity.

13   3. At all times relevant to this Complaint, Six Unknown Police and K9 was a duly authorized

14 agents, servant and employee of BCPD, working from the Northeast District. Five Unknown Police and

15 K9 are sued in their official and individual capacities.

16   4. At all times relevant to this Complaint, Sargent Natalie Preston was a duly

17 authorized agent, servant and employee of BCPD, working from the Northeast District. Sargent Natalie

18 Preston is sued in her official and individual capacity.

19   5. The Police are persons as defined by 42 U.S.C. § 1983, and at all times relevant were acting

20 under color of state law.

21   6. BCPD is a government agency. The Baltimore City Council holds hearings on police

22 department policy and establishes BCPD's budget. BCPD is a "person" as defined in 42 U.S.C. § 1983.

1      7. Anthony W. Batts is the Commissioner of BCPD, and its chief law enforcement Police. He is

2    appointed by the Mayor of Baltimore under the advice and consent of the Baltimore City Council. The

3    Commissioner, in his capacity as such, exercises final policy making authority for BCPD, establishes the

4    duties, standards of conduct, and discipline of Police. He establishes policies regarding hiring, screening,

5    training, monitoring, supervision and discipline of Police employed by BCPD. He is a person pursuant

6    to 42 U.S.C. § 1983, and has acted at all times relevant under color of state law, and is joined in this

7    Complaint in his official capacity.

8      8. Defendant Baltimore City Police Department is, for all relevant legal and practical purposes

9    herein, part of the government of the City of Baltimore. For the

10   purposes of this Complaint, Baltimore City Police Department is intended to include the Mayor and City

11   Council of Baltimore and Baltimore City, both of whom have plenary control over the Baltimore City

12   Police Department. At all times relevant, all Defendants were acting under the color of the laws, statutes,

13   ordinances, rules, regulations, customs and usages of the State of Maryland. At all times relevant, all

14   Defendants had an affirmative duty, but otherwise failed to protect the Plaintiff from harm, including

15   and especially, the risk of violation of his constitutional rights.

16     9. Defendant Mayor and City Council of Baltimore, ("City of Baltimore" or "City") and

17   Baltimore City are persons with power to sue or be sued in any court.

18     10. "Person" includes individuals, partnerships, corporations, units of government and any other

19   legal entity which may be sued.

20                        **PRE-SUIT REQUIREMENTS**

21      Plaintiff in pro per, met pre-suit requirements although it applies to third-party claimants to

22   reserves his right to legal representation at any time during proceedings and has satisfied the

1    prerequisites to suit specified by the Maryland Tort Claims Act, Md. Code Ann., State Gov't (SG) § 12-

2    106, and the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. (CJ) § 5-304, for

3    each claim in this

4    complaint to which these laws apply.

5    1.   Plaintiff sent notice of his claims to the Baltimore City Solicitor bearing a postmark from the

6         United States Postal Service; and the Maryland State Treasurer by certified mail, return receipt

7         requested.

8    2.   The Baltimore City Solicitor did respond bearing a claim no. of 077469-103 stating "This

9         acknowledges you're letter dated September 3, 2013. The conduct alleged therein does not

10        involve an employee of the Mayor and City Council of Baltimore ("City"). For this reason, we

11        do not believe the city has any legal responsibility in this matter."

12   3.   The Maryland State Treasurer did respond bearing a claim no. of NS61440514 stating "We have

13        determined that the State of Maryland is not liable in this incident". Members of Baltimore City

14        Police Department are not covered under the MTCA. Instead, Baltimore City Police Department

15        is specifically defined as a local government for purposes of the Local Government Tort Claims

16        Act.

17

18

19

20

21

22

## AMENDED COMPLAINT

1. On July 17, 2013 at 6:05 pm, the Plaintiff and his friend Richard Donaldson was stopped by a marked jeep patrol unit while traveling from Richards home to go the Plaintiffs home.

2. Heading southbound on Loch Raven Blvd while sitting at the light, Plaintiff  observed a marked police jeep traveling eastbound on Argonne with 3 police looking very hard into his automobile all wearing very dark sunglasses from about 30 to 40 feet away.

3. The jeep then made a U-turn in the middle of the intersection with no emergency lights activated and pulled up facing the driver side door of the car.  When the light turned green Plaintiff then made a left turn onto Argonne Dr. After Plaintiff turned onto Argonne Dr., the police then active their emergency lights and Plaintiff pulled to the side immediately.

4. Plaintiff was approached by 3 male Police, one that looked of Moorish decent (will later be described as Police #1) and two that looked of European decent.

5. Unidentified Police # 1 approached the driver side of the car and alleged that the Plaintiff was wearing his seat belt improperly.

6. Plaintiff then replied it's no such thing as "improper wear of a seatbelt

7.  Plaintiff asked "What did I do?" and Nathan Ulmer stated "You didn't do anything" Plaintiff stated that this was the second time this week that they were stopping him and that they were "profiling".  The Unidentified #1 Police asked what did that have to do with him stopping the Plaintiff and that was his 1st time. Plaintiff then stated "this is what you all do, profile, you use the seatbelt as a reason".

8. Plaintiff then was asked to do a favor from Nathan Ulmer to take out his keys and turn his

7

1    automobile off.

2  9. Plaintiff replied "For what? I'm going to park the car and give him the license and

3    registration like Unidentified #1 Police asked.

4  10. " Nathan Ulmer then stated that he was going to call K9 and the Plaintiff said "For what sir?

5    Do you smell any drugs? Nathan Ulmer then said "I'm going to reach in and take the keys".

6    Nathan Ulmer stated he doesn't need to smell any drugs and told Unidentified Police #3 to

7    call K9.

8  11. Plaintiff said "I know the law" and Nathan Ulmer said he knew it too and Plaintiff replied

9    that's cool and that he should stop breaking it then.

10  12. Nathan Ulmer then walked around to the driver side window and told Plaintiff to roll down

11    the window. Plaintiff said no and asked for what?  "It was 103 degrees that day and the Air

12    Conditioning was on."

13  13. The Plaintiff let the Police know that "he didn't feel safe" and Nathan Ulmer said "I don't

14    care if you don't feel safe". *(After the aggression and show of force as if they was going to*

15    *break the window, under duress and in fear of being hurt by shattering glass the Plaintiff*

16    *rolled it down.)*

17  14.  Nathan Ulmer then climbed through the window attacking the Plaintiff while violently

18    forcing him back in his seat grabbing on to his hands and arms and took the keys out of the

19    ignition.

20  15. While this was happening, the passenger said that he was going to call the police.

21    Unidentified Police#1 had already received the driver's license and registration.

22  16. In fear for his life the Plaintiff told the passenger to call 911 and asked for a supervisor.

1      17. After waiting an extensive amount of time, Plaintiff asked if they were waiting for K9 or just

2          tickets because the Supervisor had arrived.

3      18.  Unidentified Police #1 stated that the K9 is here and that he would need the Plaintiff and The

4          passenger to step out of the automobile.

5      19. Plaintiff then let the Police know that he did not consent to any searches. Plaintiff let

6          Unidentified Police #1 know that a knife was in his pocket and it was removed.

7      20. Plaintiff asked the age of the dog because it looked like a puppy. Plaintiff then engaged in a

8          conversation with the Supervisor who arrived before the K9 about being stopped for a seat

9          belt and that Nathan Ulmer had no reason to call for a K9.

10    21.  The Supervisor stated that they didn't need any reason that they could call a K9 for anything.

11    22. Plaintiff expressed to the Supervisor that he was ready to go. Allegedly the K9 gotten a hit

12         and the police began to search the car ripping the floor and back seats apart.

13    23. Plaintiff asked the K9 Handler and Supervisor how did the dog signal for a hit. The

14         supervisor stated that he didn't know how the dog signaled and that he got a hit.

15    24. The supervisor stated that the dog has a hit and that its drugs in the automobile then stated or

16         was in the automobile. Unidentified Police #1 then stated, based on that information this is

17         now a CDS investigation, the Plaintiff and Passenger were told to sit on the curb by their hot

18         jeep engine that was still running in 103 degree humid heat.

19    25. Plaintiff asked the Supervisor again how did the dog signaled for drugs. The supervisor then

20         spoke with the K9 unit Police over to the side and never answered any questions.

21    26. Plaintiff stated that your dog is on drugs and for a treat your dog will get a hit on any car you

22         want.

27. Plaintiff let the supervisor know that they were ready to go and requested the names of all the Police at the scene and the Supervisor told him he'd get a copy and he never did.

28. The passenger asked if the Police could use their "discretion" and let us go with a warning and the supervisor stated that was up to the Police writing the ticket and that it was on him.

29. While sitting on the curb Unknown Police # 1 began to record the Plaintiff and passenger with his cell phone.

30. After almost an hour the Plaintiff and passenger were released and the Plaintiff was given 3 citations. One for a cell phone because the Plaintiff recorded them and two for seat belt violations that these Police saw and witnessed were worn.

31. After waiting over a month for a summons to appear in court to arrive in the mail, the Plaintiff took it upon his self to check Maryland's case search website and noticed that a docket had been set in place for the cases and that a failure to comply suspension order was issued.

32. Nathan Ulmer issued 3 false tickets on expired Maryland Uniform Complaint and Citation DR-49 form (Rev. 10/2005) with malice and intent, a blatant attempt to secure a way to have an arrest or probable cause for driving on suspended license.

33. September 3, 2013 Plaintiff filed Notice and Demand for Discharge for the unlawful charges Nathan Ulmer enacted. On September 13, 2013 the charges were dropped.

34. Plaintiff attempted several times to file complaints with Internal Investigations Unit. A Certified letter was mailed and it was sent back because no one claimed the mail at the office using a wrong address being displayed on their website. Plaintiff then hand delivered his complaint to the office himself.

35. The Plaintiff received a letter from Internal Investigations Unit dated September 16, 2013 with case number CIU 13-03071acknowledging receipt of the complaint, dated September 12, 2013.

36. On October 22, 2013 Plaintiff placed a call to the Internal Investigations Unit and the telephone was hung up on him twice by an unidentified male.

37. After persistent calling, Plaintiff was able to get a supervisor (Stg. Natalie Preston) she stated that the Plaintiff would need to come in and make a recorded statement. Plaintiff objected to making a recorded statement because he wrote his statement and they had it.

38. Stg. Preston then stated that she doesn't know if the Plaintiff wrote his statement and if he didn't come in and make a recorded statement that she would drop the investigation.

39. Plaintiff agreed to make a statement against his will and was asked "what was a good time for him to come in the next day for an interview. Plaintiff replied 10:30. Stg. Preston then said "NO" 9:30 and if the Plaintiff didn't show at 9:30 she would drop the complaint.

40. The next day when the Plaintiff went to meet with Stg. Preston he was made to wait an hour before he left the Police station on Argonne Drive.

41. Code of Local Public Laws of Baltimore City § 16-2. Department established. The Police Department of Baltimore City is hereby constituted and established as an agency and instrumentality of the State of Maryland.

42. The purpose generally of the department shall be to safeguard the lives and safety of all persons within the City of Baltimore, to protect property therein, and to assist in securing to all persons the equal protection of the laws, to discharge its duties and responsibilities with the dignity and manner which will inspire public confidence and respect.

43. Which the defendants failed to do during these tortious acts and omissions. The defendants have participated in an unlawful policy and practice of violating citizens' rights during traffic stops in hopes to find contraband to create criminal cases.

44. After this evented happen the Plaintiff was left with the same traumatic feelings of being raped.

45. Neither the Commissioner Batts nor Mayor Rawlings-Blake has effectively protected the plaintiff from these events nor has implemented a plan to stop future assaults from the BPD.

46. Governor O'Malley, Commissioner Batts and Mayor Rawlings-Blake have all failed to implement a program that would properly train and remove "Problem Police".

**CLAIMS**
**Counts I, II, III**
**Count I: 1983-Right to be free from unreasonable searches and seizures protected under the**
**Fourth and**
**Count II: Fourteenth Amendments and**
**Count III: Article 26 of the Constitution of Maryland, Declaration of Rights**
**(Nathan Ulmer and in both his official and personal capacities)**

1. Plaintiff incorporates the allegations made in paragraphs 1 to 46 in the cause of complaint as if fully set forth herein.

2. Plaintiff asserts this claim against Nathan Ulmer and 6 Unknown Police and K9 in both their official and personal capacities.

3. Article 26 of the Maryland Declaration of Rights protects the same rights and freedoms protected by the Fourth Amendment to the United State Constitution.

4. The Fourth Amendment protects the right of the people to be secure in their Persons, Houses, Papers and "EFFECTS", against unreasonable searches and seizures shall not be violated.

5. Effects being the Plaintiffs "Automobile" his "person property". Which is also a product of a

1        "Person" and his "Papers" i.e. Ownership of his automobile threw the "Papers" filed as title

2        which end result is an "Effect" of a "Person" and his "Papers".

3    6.  A person is subject to a "seizure" within the meaning of the Fourth Amendment when his

4        liberty is restrained by a Police of the law by means of physical force or show of authority. A

5        seizure can take the form of a custodial arrest, a pedestrian "stop-and frisk," or a traffic stop.

6    7.  After effectuating a traffic stop under the wrong assumption that the Plaintiff was not

7        wearing safety belt acting without a reason to believe, reasonable suspicion, probable cause

8        or warrant, Nathan Ulmer jumped through the window assaulting the Plaintiff taking the keys

9        out of the ignition, unlawfully "seizing" the Plaintiff, Passenger and his automobile.

10   8.  After seizing the plaintiff and his automobile Nathan Ulmer instructed Unknown Police #2 to

11       call for K9 without a reason to believe, reasonable suspicion, or probable cause to believe the

12       Plaintiff or the Passenger was in possession of, or trafficking drugs with malice intent.

13   9.  Nathan Ulmer had no warrant or recognized justification for their arrest, seizure and

14       destruction of Plaintiff's automobile, their actions violated Plaintiff's rights protected by the

15       Fourth Amendment and Article 26 to be free from unreasonable searches and seizures.

16   10. Unidentified Police #1 admitted that the Plaintiff didn't do anything to initiate a stop by the

17       police. Police witnessed safety belts being worn after approaching the automobile.

18   11. Nathan Ulmer in both his official and personal capacities with malice attributed to these

19       counts by not upholding the constitution to which they swore an oath, not fulfilling his duties

20       to safeguard the lives and safety of all persons within the City of Baltimore, to assist in

21       securing to all persons the equal protection of the laws, to discharge its duties and

22       responsibilities with the dignity and manner which will inspire public confidence and respect.

1    12. Baltimore City Police Depart and the Commissioner enacted or perpetuated a policy,

2        practice, or custom that encouraged such unconstitutional retaliation. Baltimore City Police

3        Department and the Commissioner have done so through explicit or implicit instruction to

4        the Police within Baltimore City Police Department, or have acquired knowledge of such a

5        policy, practice, or custom and have not prevented its oppressive exercise by failing to

6        properly train its Police and investigate complaints against them properly.

7    13. The Baltimore Police Department, Commissioner Anthony Batts, Mayor Stephanie

8        Rawlings-Blake and Governor O'Malley caused these constitutional violations by failing to

9        implement a plan to train its Police, backing, enacting, and perpetuating a policy, practice

10       and customs that encourages and allows Police to improperly enforce the law and have not

11       prevented its oppressive exercise by failing to properly train its Police and remove "Problem

12       Police".

13   14. As a result of the aforesaid violations, Plaintiff suffered damages including emotional

14       trauma, humiliation, and distress, damage to personal property, assault and battery and loss

15       of liberty.

16                                     **Count IV, V**
17   **Count IV: 1983-Right to be free from deprivation of property without due process protected**
18                                **under the Fourteenth Amendment and**
19               **Count V: Constitution of Maryland, Declaration of Rights Article 24**
20                     **(Nathan Ulmer in both his official and personal capacities)**

21   15. Plaintiff incorporates the allegations made in paragraphs 1 to 46 in the cause of complaint as

22       if fully set forth herein.

23   16. Plaintiff asserts this claim against Nathan Ulmer in both his official and personal capacities.

24   17. Article  24 of the Constitution of Maryland , Declaration of Rights  states; That no man ought

                                              14

1    to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or

2    exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the

3    judgment of his peers, or by the Law of the land.

4    18. Acting without a reason to believe, reasonable suspicion, probable cause or warrant, Nathan

5    Ulmer, 6 Unidentified Police and K9 knowingly and willingly indulged in the deprivation of

6    the Plaintiffs liberty and property without due process during this traffic stop.

7    19. Nathan Ulmer did not have a reasonable suspicion based on an "specific and articulable fact"

8    to stop and detain the Plaintiff for almost an hour to arrest, seize and search the Plaintiff and

9    his effects.

10   20. Nathan Ulmer didn't even act on a hunch when he indicated that he was going to call K9. It

11   was an already an established practice by the Baltimore City Police Department to conduct

12   such stop and searches.

13   21. Article 24 of the Maryland Declaration of Rights protects the same freedoms protected by the

14   Due Process Clause of the Fourteenth Amendment to the United States Constitution.

15   22. Article 24 protects Plaintiff against deprivation of his property without notice and an

16   opportunity to be heard.

17   23. Nathan Ulmer deprived Plaintiff of his personal property when he effectuated this stop to

18   search the plaintiffs automobile, more so when Nathan Ulmer assaulted the Plaintiff and

19   taken his keys.

20   24. Nathan Ulmer had no warrant or recognized justification for his arrest, search, seizure and

21   destruction of Plaintiff's interior of his automobile, their actions violated Plaintiff's rights

22   protected by Article 24 to be free from deprivation of property without due process.

1    25.  Plaintiff was afforded no opportunity to contest these actions before they occurred.

2    26.  Nathan Ulmer thus violated Plaintiff's right to pre-deprivation process protected by Article

3          24 of the Maryland Declaration of Rights.

4    27. Nathan Ulmer disseized the Plaintiff of his liberties and privileges and deprived him of his

5          life liberty and property in violation of Article 24.

6    28. Nathan Ulmer did not uphold the constitution to which he swore an oath, did not fulfil his

7          duties to safeguard the lives and safety of all persons within the City of Baltimore, to assist in

8          securing to all persons the equal protection of the laws, to discharge its duties and

9          responsibilities with the dignity and manner which will inspire public confidence and respect.

10   29. Baltimore City Police Depart and the Commissioner enacted or perpetuated a policy,

11        practice, or custom that encouraged such unconstitutional retaliation. Baltimore City Police

12        Department and the Commissioner have done so through explicit or implicit instruction to

13        the Police within Baltimore City Police Department, or have acquired knowledge of such a

14        policy, practice, or custom and have not prevented its oppressive exercise by failing to

15        properly train its Police.

16   30. The Baltimore Police Department, Commissioner Anthony Batts, Mayor Stephanie

17        Rawlings-Blake and Governor O'Malley caused these constitutional violations by failing to

18        train its Police, backing, enacting, and perpetuating a policy, practice and customs that

19        encourages and allows Police to improperly enforce the law and have not prevented its

20        oppressive exercise by failing to properly train its Police and remove "Problem Police".

21   31. As a result of the aforesaid violations, Plaintiff suffered damages including emotional

22        trauma, humiliation, distress and damage to personal property.

**<u>Count VI</u>**
**Count VI: 1983-The right to free-speech protected under the First and Fourteenth Amendments,**
**and Constitution of Maryland, Declaration of Rights Article 19 & 40**
**(Nathan Ulmer & Natalie Preston in both their official and personal capacities)**

32. Plaintiff incorporates the allegations made in paragraphs 1 to 46 in the cause of complaint as if fully set forth herein.

33. Plaintiff asserts this claim against Nathan Ulmer & Natalie Preston in their official and personal capacities.

34. Article 40 of the Maryland Declaration of Rights protects the same rights and freedoms protected by the First and Fourteenth Amendment to the United State Constitution.

35. Observing and recording public police activities, by citizens without interfering with those duties is a legitimate means of gathering information of public concern for public dissemination and is therefore speech protected by the First Amendment to the United States Constitution.

36. By detaining, arresting/issuing a citation to the Plaintiff, the Police retaliated against Plaintiff for his free speech protected by Article 40, retaliated and attempted to make him pay a price for exercising said rights to record public police activities.

37. Filing a complaint against a Police is a legitimate means of gathering information of public concern for public dissemination and is therefore speech protected by the First Amendment to the United States Constitution.

38. By Stg. Natalie Preston's disregard to her duties in taking a complaint from the Plaintiff, she violated the Plaintiff right that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege; That every man, for any injury done to him in his person or property, ought to have remedy

1      by the course of the Law of the Land, and ought to have justice and right, freely without sale,

2      fully without any denial, and speedily without delay, according to the Law of the Land

3      protected and protected by Articles 19 & 40 when she closed the investigation.

4    39. Nathan Ulmer and Natalie Preston both played a part and roll in assisting to this count by not

5      upholding the constitution to which they swore an oath, not fulfilling their duties to safeguard

6      the lives and safety of all persons within the City of Baltimore, to assist in securing to all

7      persons the equal protection of the laws, to discharge its duties and responsibilities with the

8      dignity and manner which will inspire public confidence and respect.

9    40. Baltimore City Police Depart and the Commissioner enacted or perpetuated a policy,

10     practice, or custom that encouraged such unconstitutional retaliation. Baltimore City Police

11     Department and the Commissioner have done so through explicit or implicit instruction to

12     the Police within Baltimore City Police Department, or have acquired knowledge of such a

13     policy, practice, or custom and have not prevented its oppressive exercise by failing to

14     properly train its Police and investigate complaints against them properly.

15    41. The Baltimore Police Department, Commissioner Anthony Batts, Mayor Stephanie

16     Rawlings-Blake and Governor caused these constitutional violations by failing to train its

17     Police, backing, enacting, and perpetuating a policy, practice and customs that encourages

18     and allows Police to improperly enforce the law and have not prevented its oppressive

19     exercise by failing to properly train its Police and remove "Problem Police".

20    42. As a result of the Police retaliation against Plaintiff's constitutionally protected speech,

21     Plaintiff suffered damages including emotional trauma, humiliation, distress and damage to

22     person and personal property and loss of liberty

**Count VII, VIII**
**Count VII: Assault and**
**Count VIII: Battery**
**(Nathan Ulmer in both his official and personal capacities)**

43. Plaintiff incorporates the allegations made in paragraphs 1 to 46 in the cause of complaint as if fully set forth herein.

44. Plaintiff asserts this claim against Nathan Ulmer in both his official and personal capacities.

45. Nathan Ulmer physically assaulted the Plaintiff during the course of the incident described herein; he violently grabbed and shoved the plaintiff back into his seat while taking the plaintiffs keys out of the ignition.

46. Numerous accounts of Baltimore City Police being dragged by cars have surfaced as a result of the Police being injured or killing the driver. This complaint shows how such incidents are taken to those extremities by Police when they attack drivers threw windows.

47. Nathan Ulmer engaged in intentional acts of unlawful contact with Plaintiff such that he sustained serious and permanent injuries. Moreover, Ulmer utilized unreasonable, unlawful and excessive force during the course of the incident described herein.

48. Plaintiff did not consent to the described contact by Nathan Ulmer, nor did Plaintiff in any way provoke, contribute to, or in any way present any cause for Nathan Ulmer to act as he did, including the physical conduct that occurred.

49. An illegal arrest is an assault & battery.

50. Nathan Ulmer issued 3 false tickets on expired Maryland Uniform Complaint and Citation DR-49 form (Rev. 10/2005) with malice and intent.

51. The conduct of Nathan Ulmer was without legal justification to write false citations and was improperly motivated by ill will and actual malice, hate and the desire to take the Plaintiffs

1        keys to purposely detain, arrest and illegally conduct searches of his person and property was

2        without cause.

3    52. Nathan Ulmer knowingly and willingly assaulted & battered the Plaintiff not fulfilling his

4        duties to safeguard the life and safety of the Plaintiff within the City of Baltimore, to protect

5        property therein, and to assist in securing the equal protection of the laws, to discharge its

6        duties and responsibilities with the dignity and manner which will inspire public confidence

7        and respect.

8    53. The foregoing conduct of Nathan Ulmer was extreme, outrageous and beyond the bounds of

9        decency in society.

10   54. Baltimore City Police Depart and the Commissioner enacted or perpetuated a policy,

11       practice, or custom that encouraged such unconstitutional retaliation. Baltimore City Police

12       Department and the Commissioner have done so through explicit or implicit instruction to

13       the Police within Baltimore City Police Department, and have acquired knowledge of this

14       policy, practice, or custom and have not prevented its oppressive exercise by failing to

15       properly train Nathan Ulmer.

16   55. The Baltimore Police Department, Commissioner Anthony Batts, Mayor Stephanie

17       Rawlings-Blake and Governor O'Malley caused these constitutional violations by failing to

18       train its Police, backing, enacting, and perpetuating a policy, practice and customs that

19       encourages and allows Police to improperly enforce the law and have not prevented its

20       oppressive exercise by failing to properly train its Police and remove "Problem Police".

21   56. As a result of the assault & battery perpetrated by the defendants and Police Nathan Ulmer,

22       Plaintiff sustained significant physical, emotional and mental injuries. As a direct and

20

1  proximate consequence of Nathan Ulmer's actions, Plaintiff was deprived of his liberty,

2  caused to suffer extreme emotional distress which distress has manifested itself, for

3  example, by way of headaches, lack of sleep, fatigue, listlessness and nightmares, mental

4  injuries including fear for his life, humiliation, embarrassment, caused to lose time from his

5  work, damage to personal property and has suffered, and will continue to suffer, economic

6  loss due to sums of money spent to alleviate the injuries and damages that were inflicted by

7  the Police.

8  **Count IX, X,**
9  **Count IX: False Arrest and**
10  **Count X: False Imprisonment**
11  **(Nathan Ulmer in both his official and personal capacities)**

12  57. Plaintiff incorporates the allegations made in paragraphs 1 to 46 in the cause of complaint as

13  if fully set forth herein.

14  58. Plaintiff asserts this claim against Nathan Ulmer in both his official and personal capacities.

15  59. Nathan Ulmer had no legal or rational reason to believe Plaintiff had engaged in any crime

16  and was without probable cause to detain him against his will. Plaintiff was, nevertheless,

17  stalked, detained, issued false citations/arrested by the Police and made to sit on the curb next

18  to a hot running police car in 103 degree heat in an ordeal that lasted almost an hour.

19  60. After approaching the Plaintiffs automobile and noticing that safety belts were in use, Nathan

20  Ulmer falsely issued citations (arrests).

21  61. An arrest is the act of depriving a person of his or her liberty.

22  62. These acts were advanced by Nathan Ulmer, illegally and with improper motive to punish

23  Plaintiff for questioning his authority on the reason for the stop and filming the Police.

24  63. Willfully with malice and intent Nathan Ulmer held the Plaintiff against his will taking his

1      keys from his car, forcing him sit curb side of a running police jeep in 103 degree heat and

2      issuing 3 citations on Expired Maryland Uniform Complaint and Citation form DR-49 forms

3      (Rev. 10/2005).

4    64. The issuance of a citation is an arrest "Arrest type A" according to the District Court

5      Transportation Articles if made by marked patrol car.

6    65. The fact that Nathan Ulmer issued these citations on Expired DR-49 forms further shows

7      malicious and ill willed attempts to punish the Plaintiff that lead to the Plaintiffs suspended

8      license.

9    66. Nathan Ulmer purposely delayed the writing of citations to wait for K9 to arrive with no

10     reasonable suspicion or probable cause to search the Plaintiffs automobile.

11   67. The arrest/citations detainment perpetrated by the Police was without warrant, without legal

12     or logical justification, and without probable cause necessary to support a lawful

13     arrest/citation. Nathan Ulmer saw that's safety belts were worn and wrote citations anyway.

14   68.  Nathan Ulmer's conduct demonstrates their ill will, improper motive, hate and actual malice,

15     all as aforesaid.

16   69. As a direct and proximate consequence of Nathan Ulmer's actions, the Plaintiff was deprived

17     of his liberty, and property caused to suffer permanent emotional and mental injuries, caused

18     to lose time from his work and has suffered, and will continue to suffer, economic loss due to

19     sums of money spent to alleviate the injuries and damages that were inflicted by Nathan

20     Ulmer.

21   70. The foregoing conduct of Nathan Ulmer was extreme, outrageous and beyond the bounds of

22     decency in society.

1    71. Nathan Ulmer willfully carried out the false arrest and false imprisonment of the Plaintiff and

2    did not fulfill his duties to safeguard the lives and safety of all persons within the City of

3    Baltimore, to protect property therein, and to assist in securing to all persons the equal

4    protection of the laws, to discharge its duties and responsibilities with the dignity and manner

5    which will inspire public confidence and respect.

6    72. Baltimore City Police Depart and the Commissioner enacted or perpetuated a policy,

7    practice, or custom that encouraged such unconstitutional behavior. Baltimore City Police

8    Department and the Commissioner have done so through explicit or implicit instruction to

9    the Police within Baltimore City Police Department, or have acquired knowledge of such a

10    policy, practice, or custom and have not prevented its oppressive exercise by failing to

11    properly train Nathan Ulmer.

12    73. The Baltimore Police Department, Commissioner Anthony Batts, Mayor Stephanie

13    Rawlings-Blake and Governor O'Malley caused these constitutional violations by failing to

14    train its Police, backing, enacting, and perpetuating a policy, practice and customs that

15    encourages and allows Police to improperly enforce the law and have not prevented its

16    oppressive exercise by failing to properly train its Police and remove "Problem Police".

17    74. In addition, because the conduct, patterns, and practices of illegal arrests are ongoing, it is

18    likely that the Plaintiff will suffer damages as an actual and proximate result of similar

19    conduct, patterns, and practices in the future.

20    75. As a result of the False Arrest, Stalking and False Imprisonment by the defendants and

21    Nathan Ulmer, Plaintiff sustained significant physical, emotional and mental injuries. As a

22    direct and proximate consequence of Nathan Ulmer's actions, Plaintiff was deprived of his

1  liberty, caused to suffer extreme emotional distress which distress has manifested itself, for

2  example, by way of headaches, lack of sleep, fatigue, listlessness and nightmares, mental

3  injuries including fear for his life, humiliation, embarrassment, caused to lose time from his

4  work, damage to personal property and has suffered, and will continue to suffer, economic

5  loss due to sums of money spent to alleviate the injuries and damages that were inflicted by

6  the Police.

7       **Count XI, XII**
8       **Count XI: False Light and**
9       **Count XII: Harassment**
10      **(Nathan Ulmer in both his official and personal capacities)**
11

12  76. Plaintiff incorporates the allegations made in paragraphs 1 to 46 in the cause of complaint as

13      if fully set forth herein.

14  77. Plaintiff asserts this claim against Nathan Ulmer in both his official and personal capacities.

15  78. As a result of Nathan Ulmer's intentional, ill willed harassment and malicious attempts to

16      incriminate the Plaintiff during his illegal detainment he was put in a false light.

17  79. The public humiliation and embarrassment the Plaintiff endured while being forced to sit on

18      the curb in front of witnesses and bystanders while his car was being illegally searched was

19      highly offensive placed the plaintiff in a false light as if he was involved in criminal activity.

20  80. Nathan Ulmer issued 3 citations against the Plaintiff with intentional ill will and malice

21      falsely accusing the plaintiff leaving him subject to publication on Maryland Judiciary Case

22      Search that is not able to be expunged.

23  81. Nathan Ulmer maliciously engaged in a course of conduct that alarmed and seriously

24      annoyed the Plaintiff without legal purpose.

25  82. The Plaintiff has endured similar types of acts before from the Baltimore City Police

1    Department from its illegal practices and policies it implies.

2    83. The conduct of Nathan Ulmer who acted together with other police, was extreme, outrageous

3         and beyond the bounds of decency in society.

4    84. All Police involved in this incident played a part and roll in assisting to the false light and

5         harassment, not fulfilling their duties to safeguard the lives and safety of all persons within

6         the City of Baltimore, to assist in securing to all persons the equal protection of the laws, to

7         discharge its duties and responsibilities with the dignity and manner which will inspire public

8         confidence and respect.

9    85. Baltimore City Police Depart and the Commissioner enacted or perpetuated a policy,

10        practice, or custom that encouraged such unconstitutional behavior. Baltimore City Police

11        Department and the Commissioner have done so through explicit or implicit instruction to

12        the Police within Baltimore City Police Department, or have acquired knowledge of such a

13        policy, practice, or custom and have not prevented its oppressive exercise by failing to

14        properly train its Police and investigate complaints against them properly.

15   86. The Baltimore Police Department, Commissioner Anthony Batts, Mayor Stephanie

16        Rawlings-Blake and Governor O'Malley caused these constitutional violations by failing to

17        train its Police, backing, enacting, and perpetuating a policy, practice and customs that

18        encourages and allows Police to improperly enforce the law and have not prevented its

19        oppressive exercise by failing to properly train its Police and remove "Problem Police".

20   87. As a result of the false light and harassment by Police Nathan Ulmer, Plaintiff sustained

21        significant physical, emotional and mental injuries. As a direct and proximate consequence of

22        Nathan Ulmer's actions, Plaintiff was deprived of his liberty, caused to suffer  extreme

1    emotional distress which distress has manifested itself, for example, by way of headaches,

2    lack of sleep, fatigue, listlessness and nightmares, mental injuries including fear for his life,

3    humiliation, embarrassment, caused to lose time from his work, damage to personal property

4    and has suffered, and will continue to suffer, economic loss due to sums of money spent to

5    alleviate the injuries and damages that were inflicted by the Police.

**Count XIII, XIV, XV**
**Count XIII: Illegal Search & Seizure**
**Count XIV: Invasion of Privacy and**
**Count XV: Conversion**
**(Nathan Ulmer in both his official and personal capacities)**

88. Plaintiff incorporates the allegations made in paragraphs 1 to 46 in the cause of complaint as
    if fully set forth herein.

89. Plaintiff asserts this claim against Nathan Ulmer in both his official and personal capacities.

90. This routine traffic stop was a "search incident to citation" where various rights were violated
    and laws were broken by Nathan Ulmer.

91. Nathan Ulmer had no  reason to believe, reasonable suspicion, probable cause or warrant to
    illegally search and seize the Plaintiff and his Property while commencing in conversion and
    invading his privacy.

92. Nathan Ulmer stated during the traffic stop that the Plaintiff "didn't do anything".

93. Nathan Ulmer already had it in his mind that he was going to call K9 before the Plaintiff was
    able to furnish Unknown Police #1 with his license and registration.

94. Plaintiff was cited for seat belt and cellphone violations, civil infractions, offenses for which
    police could not expect to find evidence of in the car that would warrant a search.

95. Plaintiff expressed several times that he did not consent to searches.

1 96. Automobile owners have a reasonable expectation of privacy in the cars they own and drive.

2 97. Being a private person, owing private property it's a right and it's to be expected.

3 98. The Plaintiff has endured similar types of acts before from the Baltimore City Police

4  Department from its illegal practices and policies it implies.

5 99. Nathan Ulmer violated the Plaintiffs right to that privacy when he and Unidentified Police #1

6  used a show of force to threaten and make the Plaintiff roll his window down, so that Nathan

7  Ulmer could climb through the window assaulting the Plaintiff and taking his keys, an act of

8  intrusion of solitude.

9 100. Unknown Police #1 violated the Plaintiffs right to privacy when used his personal cell

10  phone to record the Plaintiff and Passenger sitting on the curb.

11 101. The Plaintiff has endured similar types of acts before from the Baltimore City Police

12  Department from its illegal practices and policies it implies.

13 102. The foregoing conduct of the Police, who acted together, was extreme, outrageous and

14  beyond the bounds of decency in society.

15 103. Both Nathan Ulmer and Unknown Police #1 involved in this incident played a part and

16  roll in assisting to the illegal search and seizure invasion of privacy and conversion, not

17  fulfilling their duties to safeguard the lives and safety of all persons within the City of

18  Baltimore, to assist in securing to all persons the equal protection of the laws, to discharge its

19  duties and responsibilities with the dignity and manner which will inspire public confidence

20  and respect.

21 104. Baltimore City Police Depart and the Commissioner enacted or perpetuated a policy,

22  practice, or custom that encouraged such unconstitutional behavior. Baltimore City Police

27

1      Department and the Commissioner have done so through explicit or implicit instruction to

2      the Police within Baltimore City Police Department, or have acquired knowledge of such a

3      policy, practice, or custom and have not prevented its oppressive exercise by failing to

4      properly train its Police.

5      105.    The Baltimore Police Department, Commissioner Anthony Batts, Mayor Stephanie

6      Rawlings-Blake and Governor caused these constitutional violations by failing to train its

7      Police, backing, enacting, and perpetuating a policy, practice and customs that encourages

8      and allows Police to improperly enforce the law and have not prevented its oppressive

9      exercise by failing to properly train its Police and remove "Problem Police".

10     106.    In addition, because the conduct, patterns, and practices of unreasonable searches and

11     seizures and invasion of privacy are ongoing, it is likely that the Plaintiff will suffer damages

12     as an actual and proximate result of similar conduct, patterns, and practices in the future.

13     107.    As a result of the Defendants' violation of Plaintiff's right to be free from unreasonable

14     searches and seizures, invasion of privacy and conversion, Plaintiff sustained significant

15     physical, emotional and mental injuries. As a direct and proximate consequence of Nathan

16     Ulmer's actions, Plaintiff was deprived of his liberty, caused to suffer permanent emotional

17     and mental injuries, humiliation, embarrassment and distress, caused to lose time from his

18     work, damage to personal property and has suffered, and will continue to suffer, economic

19     loss due to sums of money spent to alleviate the injuries and damages that were inflicted by

20     the Police.

21

22

**Count XVI, XVII, XVIII**
**Count XVI: Gross Negligence**
**Count XVII: Actual Malice and**
**Count XVIII: Intentional Infliction of Emotional Distress & Embarrassment**
**(Nathan Ulmer in both his official and personal capacities)**

108.    Plaintiff incorporates the allegations made in paragraphs 1 to 46 in the cause of complaint

as if fully set forth herein.

109.    Plaintiff asserts this claim against Nathan Ulmer in both his official and personal

capacities.

110.    Nathan Ulmer while conducting this traffic stop acted with Gross Negligence, Malice and

Intentional Infliction to cause Emotional Distress and Embarrassment to the Plaintiff while

engaging in all previously stated counts.

111.    Nathan Ulmer physically assaulted the Plaintiff violently grabbing and shoved the

Plaintiff back into his seat acting with gross negligence intentionally inflicting emotional

distress & embarrassment.

112.    Nathan Ulmer knowingly and willingly with actual malice issued 3 citations with no

regard to the truth.

113.    Nathan Ulmer acted with gross negligence when failing to do his duty as an Police of the

law stating to the Plaintiff that "he didn't care" if the Plaintiff felt safe, not fulfilling his

duties to safeguard the lives and safety of all persons within the City of Baltimore, to assist in

securing to all persons the equal protection of the laws, to discharge his duties and

responsibilities with the dignity and manner which will inspire public confidence and respect.

114.    Unknown Police #1 intentionally inflicted emotional distress and embarrassment having

recorded the Plaintiff and Passenger sitting on the curb in retaliation with his personal cell

1       phone.

2     115.    Both Nathan Ulmer and Unknown Police # 1 intentionally inflicted emotional distress

3       and embarrassment having treated Plaintiff and Passenger as criminals in the eyes of the

4       public being forced to sit on the curb in front of witnesses and bystanders while his car was

5       being illegally searched was highly offensive oppressive and unjust.

6     116.    The Plaintiff has endured similar types of acts before from the Baltimore City Police

7       Department from its illegal practices and policies it implies.

8     117.    The foregoing conduct of the Police, who acted together, was extreme, outrageous and

9       beyond the bounds of decency in society.

10    118.    Both Nathan Ulmer and Unknown Police #1 played a part and roll in assisting to the

11      Gross Negligence, Actual Malice and Intentional Infliction of Emotional Distress &

12      Embarrassment, not fulfilling their duties to safeguard the lives and safety of all persons

13      within the City of Baltimore, to assist in securing to all persons the equal protection of the

14      laws, to discharge its duties and responsibilities with the dignity and manner which will

15      inspire public confidence and respect.

16    119.    Baltimore City Police Depart and the Commissioner enacted or perpetuated a policy,

17      practice, or custom that encouraged such unconstitutional behavior. Baltimore City Police

18      Department and the Commissioner have done so through explicit or implicit instruction to

19      the Police within Baltimore City Police Department, or have acquired knowledge of such a

20      policy, practice, or custom and have not prevented its oppressive exercise by failing to

21      properly train its Police and investigate complaints against them properly.

22    120.    The Baltimore Police Department, Commissioner Anthony Batts, Mayor Stephanie

1      Rawlings-Blake and Governor caused these constitutional violations by failing to train its

2      Police, backing, enacting, and perpetuating a policy, practice and customs that encourages

3      and allows Police to improperly enforce the law and have not prevented its oppressive

4      exercise by failing to properly train its Police and remove "Problem Police".

5      121.    As a result of the Gross Negligence, Actual Malice and Intentional Infliction of

6      Emotional Distress & Embarrassment by the defendants and Nathan Ulmer, Plaintiff

7      sustained significant physical, emotional and mental injuries. As a direct and proximate

8      consequence of Nathan Ulmer's actions, Plaintiff was deprived of his liberty, caused to suffer

9      extreme emotional distress which distress has manifested itself, for example, by way of

10      headaches, lack of sleep, fatigue, listlessness and nightmares, mental injuries including fear

11      for his life, humiliation, embarrassment, caused to lose time from his work, damage to

12      personal property and has suffered, and will continue to suffer, economic loss due to sums of

13      money spent to alleviate the injuries and damages that were inflicted by the Police.

14

15      **<u>DEMAND FOR JURY TRIAL</u>**

16      Plaintiff right to Trial by Jury is protected under the Constitution of Maryland, Declaration of

17  Rights Article 5(b) and is respectfully demanded.

18

19

20

21

22

1        **CLAIMS FOR RELIEF**

2

3    WHEREFORE, on Counts I through XVIII Plaintiff respectfully request that this honorable Court grant

4    to him the following relief:

5            A.  Declaratory judgment that:

6        1.  Declare that defendants acts violate the Fourth and the Fourteenth Amendments to the U.S.

7            Constitution;

8        2.  Declare that defendants acts violate Articles 24,26, and 40 of the Constitution of Maryland,

9            Declaration of rights;

10       3.  Declare that the right to privacy in one's automobile is no different than one's home or any

11           other consumer good or private property that would require a warrant before its search.

12       4.  Declare Nathan Ulmer retaliated against Plaintiff by assaulting him, detaining him, issuing 3

13           false citations and infringed upon his right to privacy, free speech, protected by the First and

14           Ninth Amendment and Article 40 of the Maryland Declaration of Rights, and his right to be

15           free from unreasonable searches and seizures protected by the Fourth Amendment and

16           Article 26, and his right to be  free from be taken or imprisoned or disseized of his freehold,

17           liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his

18           life, liberty or property, but by the judgment of his peers, or by the Law of the land protected

19           by Article 24 of Maryland Declaration of Rights;

20       5.  A permanent injunction that bars the All Police in Maryland and Police of the BCPD from

21           using seatbelt or cellphone statues for use of probable cause to effectuate traffic stops;

22       6.  A permanent injunction that bars the use of K9's in traffic stops to engage in searches and

23           declare K9's as an unreliable sources and means to initiate a search.

1

    B. With regard to the emotional trauma, humiliation, distress, bodily injury and damage to personal property that Plaintiff suffered from the acts of the Defendants, Plaintiff claims damages as follows:

7. As to the assault and battery and violations of rights carried out by Nathan Ulmer, Plaintiff seeks compensatory and punitive damages from Nathan Ulmer and Baltimore City Police Department jointly and severally, in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000).

8. As to the acts carried out under the auspices of a policy or practice of BCPD and the Commissioner resulting in violations of Plaintiff's federal protected constitutional rights, failing to train and remove "Problem Police". Plaintiff seeks compensatory damages against BCPD, the Commissioner and the Police in their official capacities, jointly and several, in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000).

9. As to the acts resulting in violations of Plaintiff's federal protected constitutional rights, Plaintiff seeks compensatory and punitive damages against Nathan Ulmer & Natalie Preston in their individual capacities, jointly and severally, in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000).

10. As to the acts resulting in violations of Plaintiff's federal protected constitutional rights and failing to train and remove "Problem Police". Plaintiff seeks compensatory and punitive damages against Mayor & City Council of Baltimore ("City") Stephanie Rawlings-Blake, jointly and severally, in an amount to be determined at trial, but not less than Five Hundred

1        Thousand Dollars ($500,000).

2    11. As to the acts resulting in violations of Plaintiff's state protected constitutional and common

3        law rights, Plaintiff seeks compensatory and punitive damages from Nathan Ulmer, jointly

4        and severally, in an amount to be determined at trial, but not less than Five Hundred

5        Thousand Dollars ($500,000).

6    12. As to the acts resulting in violations of Plaintiff's state constitutional and common law rights

7        and failing to train and remove "Problem Police". Plaintiff seeks compensatory and punitive

8        damages from Mayor & City Council of Baltimore (City) Stephanie Rawlings-Blake, jointly

9        and severally, in an amount to be determined at trial, but not less than Five Hundred

10       Thousand Dollars ($500,000).

11   13. Any other relief as this honorable Court may deem just and deserving.

12

13                                   Respectfully submitted,

14                                   Darrell Harris
15                                   3302 Parkside Drive
16                                   Baltimore, Maryland 21214
17                                   410-807-1503(p)
18                                   443-632-9343(f)
19                                   darrellrealty@aol.com

20

21

22

23

24

25

1                           **Certificate of Service**

2

3       I, Darrell P. Harris certify that on this 24th day of March, 2015, copies of the foregoing were sent by E-
4       mail or USPS Mail postage prepaid to the following:

5

6

7
        Dorrell A. Brooks                    Adams, Esq, Elizabeth L          Frederic Smalkin, JR
        Baltimore City Law Department        80 Calvert St 4th Floor        Assistaint Solicitor
8       BPD Legal Affairs                    Louis L Goldstein Bldg.          Baltimore City Law Dept.
        100 North Holliday Street, Room 101  Annapolis, MD 21401              100 N. Holliday St Rm 81
9       Baltimore, Maryland 21202            eadams@oag.state.md.us           Baltimore, Maryland 21202
        Dorrellbrooks1975@msn.com            *Attorney for Defendants,*       Fred.smalkin@baltimore.gov
10      *Attorney for Defendant*             *The Governor & State of*        *Attorney for Defendants Mayor*
        *Baltimore Police Department*        *Maryland*                       *and City Council of Baltimore*
11      *E-MAIL*                             *E-MAIL*                         *E-MAIL*

12      Patrick D. McKevitt
        Dennis M Robinson, Jr
13      WHITEFORD, TAYLOR &PRESTON L.L.P.
        Seven Saint Paul Street, Suite 1500
14      Baltimore, Maryland 21202
15      drobinson@wtplaw.com
16      mratliff@wtplaw.com
        *Attorneys for Defendants Nathan Ulmer &*            Darrell P. Harris
17      *Natalie Preston*                                    3302 Parkside Drive
18      *USPS*                                          Baltimore, Maryland 21214
19                                                           410-807-1503(p)
20                                                           443-632-9343(f)
21                                                       darrellrealty@aol.com